**UNITED STATES of America, Plaintiff,**

v.

**Michael Eugene HARKEY, Defendant.**

**No. CR–88–244–S.**

United States District Court,
E.D. Washington.

March 23, 1989.

Earl A. Hicks, Asst. U.S. Atty., Spokane, Wash., for plaintiff.

Robert D. McGoldrick, Spokane, Wash., for defendant.

## MEMORANDUM OPINION

QUACKENBUSH, District Judge.

On January 27, 1989, this court imposed a sentence of 5 years on the defendant, based upon his having been found guilty by a jury on October 18, 1988 of being a felon in possession of a firearm. This 5-year sentence is the maximum permitted by law; however, the Government contended that the court was obligated to impose a mandatory 15-year term pursuant to 18 U.S.C. § 924(e)(1), based upon the prior burglary convictions of the defendant. On January 27, 1989, the court rendered its oral opinion rejecting the contention of the Government and stated its reasons for that rejection. This Memorandum Opinion is intended to memorialize the court's oral ruling and to incorporate recent court rulings delivered subsequent to this court's oral ruling.

## FACTUAL BACKGROUND

In the summer of 1988, Matthew Weist, a paid Government informant, informed Spokane police officers and/or A.T.F. agents that his friend Michael Harkey owned a firearm. The police officers directed Mr. Weist to talk with Mr. Harkey on the phone while they recorded the conversations to see if Mr. Harkey would make an admission of possession of a firearm. Weist informed the officers that he believed Harkey owned a .22 caliber pistol.

Thereafter, Weist concocted a story, with the assistance of the police officers, that he was to meet a "biker," who Weist was afraid of, to collect a debt. Weist told this false story to the defendant Harkey and asked Harkey to accompany him to Sullivan Park to meet the "biker." Weist requested Harkey to bring his pistol. Harkey agreed to accompany Weist to Sullivan Park, where the police were waiting. Harkey was arrested, searched, and found to be in possession of a single-shot Derringer pistol.

On August 10, 1988, Harkey was indicted on the charge of being a felon in possession of a firearm. Mr. Harkey refused to plead guilty to the charge, alleging he was entrapped into committing the crime by the police and their informant, Mr. Weist. Thereafter, on September 26, 1988, the Government filed an Information in which it claimed that if convicted, Harkey should be sentenced to not less than 15 years without parole by reason of his prior burglary convictions.

Harkey was found guilty of the firearm charge on October 18, 1988. An initial sentencing hearing took place on November 18, 1988. It is undisputed that Harkey has two prior felony convictions for first degree burglary and three prior felony convictions for second degree burglary, all under the laws of the State of Washington.

At the November 18, 1988 hearing, the court expressed concern over the failure of the federal enhancement statute, 18 U.S.C. § 924(e)(2)(B)(ii), to define or set forth the elements of "burglary" as referred to therein. The court pointed out that the elements of the Second Degree Burglary statute of the State of Washington, under which Harkey was convicted, would legally allow a conviction of an individual who lawfully walked into the Newberry's store with the intent of shoplifting some candy therein. While the foregoing was an extreme example which the court would hope the exercise of prosecutorial discretion would preclude, the court's example illustrates the disparity which can arise if "burglary" is not given some definition.

### ANALYSIS

Subsection 924(e)(1) provides that:

In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a *violent felony* or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned *not less than fifteen years,* and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection. (Emphasis added).

Subsection 924(e)(2)(B) defines the term "violent felony" as:

any crime punishable by imprisonment for a term exceeding one year that—

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; *or*

(ii) *is burglary,* arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

(Emphasis added). However, unlike its predecessors, the statute does not define "burglary."

The original bill, which established the mandatory minimum 15–year penalty, limited its application to three or more prior convictions for robbery or burglary, and defined burglary as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." *See* The Armed Career Criminal Act of 1984, Pub.L. 98–473, Ch. XVIII, 98 Stat. 2185, codified at 18 U.S.C. App. 1202. Public Law 99–308 expanded the mandatory prison term to include the convictions involving the use of a firearm during a drug trafficking offense, and contained the definition of burglary as "any crime punishable by a term of imprisonment exceeding one year and consisting of entering or remaining within a building that is the property of another with intent to engage in conduct constituting a Federal or State offense." Act of May 19, 1986, Pub.L. 99–308, § 104(a), 100 Stat. 456, 458. However, this language was shortlived, and by the Act of October 27, 1986, Congress replaced the language "for robbery or burglary, or both," with "for a violent felony or a serious drug offense, or both." Pub.L. 99–570, 100 Stat. 3207–39, 18 U.S.C. § 924(e)(1). The statute then went on to define "violent felony," as set forth *supra,* to include "burglary." However, the definition of burglary formerly included within the statute was eliminated.

■ In interpreting the reach of a criminal statute, the court must determine the intent of Congress as reflected in the language, structure, and legislative history of the statute. *Garrett v. United States,* 471 U.S. 773, 105 S.Ct. 2407, 85 L.Ed.2d 764 (1985). When these manifestations of congressional intent are ambiguous, the Rule of Lenity requires the court to strictly construe the statute in favor of the defendant. *United States v. Turkette,* 452 U.S. 576, 587 n. 10, 101 S.Ct. 2524, 2530 n. 10, 69 L.Ed.2d 246 (1981). This rule is based upon the concept that "a penal statute must define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and

in a manner that does not encourage arbitrary and discriminatory enforcement." *United States v. Chatman*, 869 F.2d 525 (9th Cir.1989) (quoting *Kolender v. Lawson*, 461 U.S. 352, 357, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903 (1983)).

Subsequent to this court's hearing on November 18, 1988, the Ninth Circuit handed down its decision in *United States v. Sherbondy*, 865 F.2d 996 (9th Cir.1988). The Ninth Circuit expressly rejected the argument that it should look to the state law definition of "violent felony" in determining whether a prior felony conviction should be counted for purposes of sentence enhancement. Rather, "we look to the federal definition when determining whether a defendant was convicted of a violent felony." *Id.* at 1005.

The *Sherbondy* court then examined the language of subsection (i) and concluded that to utilize a conviction under that subsection, the crime must have, *as an element of the offense*, the use, attempted use, or threatened use of physical force against the person of another. *Id.* In reaching that decision, the court cited with favor the Fourth Circuit's decision in *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988), which held that the defendant was not subject to sentencing under subsection (i) because the crime of "storehouse breaking," as defined in the Maryland statute, did not have as an element the use of force against the person. 852 F.2d at 756. In addition, "evidence of the specific acts involved in the offense is irrelevant under subsection (i)." *Sherbondy*, at 1006.

Under Washington laws, RCW 9A.52.030 defines second degree burglary as:

> (1) A person is guilty of burglary in the second degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a building other than a vehicle.

It is clear that this definition does not include, as an element of the offense, the use, attempted use, or threatened use of physical force against the person of another. Therefore, second degree burglary, as defined in Washington, cannot be utilized to enhance a sentence under subsection (i).

The court must next examine the language of subsection (ii). The *Sherbondy* court noted that the first part of subsection (ii) "sets forth specific property offenses that Congress expressly wanted to cover," i.e., burglary, arson, extortion, or the use of explosives, which the court construed as "clearly categorical." *Id.* at 1008. The court then went on to state, in dicta, that "a burglar, for example, cannot claim as a defense that his or her particular conduct was non-violent." *Id.* Congress believed that these four categories involved conduct which poses a particularly serious risk of injury to others, even though violence is not an element of the offense. *Id.* at 1009.

■ The dicta in *Sherbondy* is not dispositive of the question before this court, since 18 U.S.C. § 924(e) does not define burglary. When Congress uses a common law term like burglary in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given that term at common law. *Morissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952); *United States v. Smith*, 574 F.2d 988, 990 (9th Cir.1978), *cert. denied*, 439 U.S. 852, 99 S.Ct. 158, 58 L.Ed.2d 156 (1978). The common law definition of burglary is "the breaking and entering of the dwelling house of another in the nighttime with the intent to commit a felony." *Bayless v. United States*, 381 F.2d 67 (9th Cir.1967).

Burglary does not have a common, modern definition. An examination of burglary statutory definitions for the states lying within the boundaries of the Ninth Circuit discloses that they vary widely, both in definitions and elements.[1] None conforms precisely to the old common law definition. Washington's first degree burglary statute

---

1. *See*, Revised Code of Washington, 9A.52.020 and .030; Idaho Code §§ 18–1401, –1402, –1403; Revised Code of Montana, 45–6–204; Oregon Revised Statutes 164.215, 164.225; California Penal Code §§ 459, 460; Alaska Statutes §§ 11.-46.300; 11.46.310; Nevada Revised Statutes § 205.060; Arizona Statutes §§ 13–1506, 13–1507, 13–1508; and Hawaii Statutes §§ 708–810 and 708–811.

has eliminated every element of the common law crime except the requirement that the building be a dwelling.[2] Should this court adopt the position that the state definition of burglary should be applied in the sentencing enhancement analysis, rather than the common law definition, the result would be that a defendant would be subject to disparate treatment, according to the individual state's definition of burglary.

Subsequent to this court's oral opinion on January 27, 1989, the Ninth Circuit decided *United States v. Chatman*, 869 F.2d 525 (9th Cir.1989). The Ninth Circuit refused to recognize "auto burglary" as a sentence-enhancing crime, and expressly adopted the Fourth Circuit's reasoning in *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988). Under this recent decision, the law of the Ninth Circuit is that, "by leaving the term burglary undefined, Congress intended it to have its common law meaning. 'Burglary' therefore means the breaking and entering of the dwelling house of another, in the nighttime, with the intent to commit a felony therein." *Chatman*, at 527. In reaching that decision, the court felt that the context of the statute "suggests that Congress had in mind something more dangerous than theft from a locked vehicle." *Id.* By the inclusion of the words "or otherwise presents a serious potential risk of physical injury", the *Chatman* majority felt that Congress intended to limit the scope of the act to those crimes which engender serious risk of injury to persons, and did not intend to include all of the common property offenses that states might choose to denominate as "burglary." *Id.* at 528.

Although *Chatman* seems dispositive of the issue now before this court, being a decision from the Ninth Circuit, this court has some remaining concerns about this matter. In *Chatman*, the court expressly stated that one of the bases for its decision was that it wished to "avoid creating an unnecessary intercircuit conflict on this novel issue." *Id.* However, it appears a conflict between circuits does exist. At the present count, only the Fourth Circuit and the Ninth Circuit have restricted the statute to its common law definition.

The Seventh Circuit, in *United States v. Dickerson*, 857 F.2d 414 (7th Cir.1988), *petition for cert. filed December 24, 1988*, held that *all* burglaries satisfy the prerequisites of § 924. *Id.* at 419. In that particular case, the defendant was convicted of entering residences, although he was not armed. He argued that his burglary convictions were therefore not "violent felonies." The court did not agree. In examining the language of § 924(d) the court noted that, "if Congress intended to include only crimes in which some serious physical injury was involved, it would have worded the statute to say 'burglary, arson, or extortion, *and* involves the risk of explosives or otherwise involves conduct that presents a serious risk of physical injury to another'." *Id.* It did not do so.

In *United States v. Headspeth, supra*, the Fourth Circuit reached the opposite conclusion. In that case, the defendant had two prior robbery convictions, but challenged that his third prior felony, which involved "storehouse breaking," was not a "violent felony" within the meaning of § 924(e). The court agreed. The court determined that "storehouse breaking" as defined in the Maryland statute[3] did not have "as an element the use—actual, attempted, or threatened—of force against the person." *Id.* at 756. The court examined § 924(e) and determined, that, since it did not define burglary, Congress intended to adopt the meaning given that term at

---

2. RCW 9A.52.020 defines burglary in the first degree as: "A person is guilty of burglary in the first degree if, with intent to commit a crime against a person or property therein, he enters or remains unlawfully in a dwelling and if, in entering or while in the dwelling or in immediate flight thereof, the actor or another participant in the crime (a) is armed with a deadly weapon, or (b) assaults any person therein."

3. Md.Ann.Code art. 27, § 32 defined "storehouse breaking" as "breaking [into] a storehouse, filling station, garage, trailer, cabin, diner, warehouse or other outhouse or into a boat in the day or night with an intent to commit murder or felony therein, or with the intent to steal, take or carry away the personal goods of another of the value of $300 or more therefrom...."

common law. *Id.* at 757 (citing *Morrissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952)). Within that definition, "the generic term burglary would not encompass the specific offense of storehouse breaking set forth in Md. Code Ann. art. 27, § 32, because the latter does not involve a dwelling house in the nighttime." *Id.* The court refused to apply the more expansive burglary definition formerly included in § 924(e), which it conceded would have included storehouse breaking, because that definition had been specifically deleted by Congress. In reaching this decision, the court noted:

> [T]his broad statutory definition of burglary was extremely short-lived. Two days after § 924(e) was enacted—and several months before it became effective—Congress began to consider expanding the list of predicate offenses that would trigger it. *See* Armed Career Criminal Legislation: Hearing on H.R. 4639 and H.R. 4768 before the Subcomm. on Crime of the House Comm. on the Judiciary, 99th Cong., 2d Sess. 44 (May 21, 1986) [hereinafter Hearing]. At the ensuing hearings, there was a general consensus that the specific predicate offenses of "robbery" and "burglary," together with their respective definitions, should be replaced with the more general terms "serious drug offense" and "violent felony." *See* H.R.Rep. No. 849, 99th Cong., 2d Sess. 3 (1986). There was considerable disagreement, though, about how to define the term "violent felony."
>
> One proposed amendment, introduced by Representative Wyden of Oregon, favored a broad definition which would include crimes against both persons and property:
>
> (A) an offense that has an element the use, attempted use, or threatened use of physical force against the person *or property* of another; or
>
> (B) any felony which, by its nature, involves a substantial risk that physical force against the person *or property* of another may be used in the course of committing the offense.
>
> H.R. 4639, 99th Cong., 2d Sess. (1986) (emphasis added). This proposal drew a flurry of criticism, for the inclusion of property crimes was thought to be an unwarranted extension of federal criminal jurisdiction which would both encroach upon state sovereignty and overload the federal prison system. *See, e.g.,* Hearing at 11 (statement of Rep. Hughes).
>
> A second proposal, introduced by Representatives Hughes and McCollum, would have defined the term "violent felony" much more narrowly as "any Sate or Federal felony that has *as an element* the use, attempted use, or threatened use of physical force against the *person* of another." H.R. 4768, 99th Cong., 2d Sess. (1986) (emphasis added). This definition would have excluded burglary as a predicate offense, because the actual or threatened use of force against the person is not an element of that offense, either at common law or under the original § 924(e)(2)(B). *See* Hearing at 26 (statement of Rep. Hughes) (indicating that the exclusion of burglary was deliberate).
>
> The Hughes/McCollum proposal was roundly criticized for its failure to include burglary, arson, and other violent crimes against property which, though they did not have the actual or threatened use of force against the person as an element, nonetheless posed a severe inherent danger to human life. *See, e.g.,* Hearing at 9 (statement of Rep. Wyden); *id.* at 23–24 (statement of James Knapp, Deputy Ass't Attorney General, Crim. Div., U.S.Dept. of Justice).
>
> The amendment that was ultimately passed, and now appears as 18 U.S.C. § 924(e)(2)(B), was a compromise of sorts ... designed to satisfy the proponents of H.R. 4639, while the limitation of that provision to crimes which present a serious risk of injury to the *person* was a concession to those who favored H.R. 4868.

*Id.* at 757–58.

The Eleventh Circuit addressed this issue in *United States v. Hill*, 863 F.2d 1575 (11th Cir.1989). In that case, the defendant had been convicted of daylight burglaries

of business establishments, clearly outside the scope of the common law definition of burglary. The court refused to restrict § 924(e) to the common law definition of burglary, which it characterized as an "historical anomaly," to which only a handful of jurisdictions today adhere. *Id.* at 1582. The court found it proper to consider the legislative history of the statute as a whole, not merely of the amendment. It emphasized Congress's intent to expand the coverage of § 924(e) through a definition that would encompass all the offenses under the old Act, while adding certain drug offenses and other violent crimes. *Id.* at 1580. Its research disclosed that during the Senate Hearing there was no hint of narrowing the scope of the Act, nor was there any mention of the old common law definition of burglary. *Id.* The court also pointed out that, although H.R. 4768 appeared on its face to eliminate using the Armed Career Criminal Act against persons with prior convictions for burglaries, the House hearing revealed a contrary understanding, "at least on the part of its cosponsor," who suggested that the bill would expand the predicate offenses, while still including burglary and robbery. House Hearing at 7 (remarks of Representative McCollum). Finally, the court emphasized that any differences between the proposed bills went to how much Congress should expand the predicate offenses. *Id.* at 1581. The court concluded that "Congress intended that any burglary that would have met the definition of burglary under the previous act would fall within the meaning of burglary in the amended definition." *Id.* at 1582.

In *United States v. Portwood*, 857 F.2d 1221 (8th Cir.1988), *petition for cert. filed* Feb. 11, 1989, the Eighth Circuit refused to recognize any ambiguity in § 924(e), and therefore declined to explore the legislative history. It stated:

> In our view, the statute says "burglary," and we take that to mean "burglary," however a state may choose to define it. Congress could quite reasonably conclude that no matter what the felon's intent upon breaking in, the property owner may return, a neighbor may inves-

tigate, or a law enforcement official may respond. All of these scenarios present a grave threat of harm to persons. A person with three prior convictions for burglary, regardless of the details of each burglary, presents the type of potential threat to society that Congress sought to control by the enactment of § 924(e).

*Id.* at 1223–24. The Eight Circuit reaffirmed that position in *United States v. Taylor*, 864 F.2d 625 (8th Cir.1989), although with a strong, well-reasoned dissent by Senior Circuit Judge Bright. Judge Bright argued that *Portwood* could not be justified upon a careful examination of the federal statute and its legislative history, and suggested that *Portwood* "needs re-examination by this court en banc or by the United States Supreme Court." In addition to extensively quoting from *Headspeth*'s careful analysis of the legislative history, which Judge Bright characterized as "instructive and dispositive," he pointed out that conduct amounting to storehouse breaking in Maryland would be at least second degree burglary in Missouri. And,

> [f]ollowing the majority's analysis to its logical conclusion, a traffic offense of wrongful parking, i.e., the taking of someone else's privilege of using a parking space, if labeled burglary by a state, could be used to enhance a sentence under section 924.
>
> I do not believe the application of a federal sentence enhancement provision should turn on the differing labels given to similar conduct by the various states. Such application treats similarly situated persons differently for the purpose of a federally imposed sentence. I find it unlikely Congress would have intended such a result.

*Id.* at 628.

The difficulty the courts have had with this question is shown by Judge O'Scannlain's dissent in *Chatman, supra.* Judge O'Scannlain pointed out the unlikelihood that Congress would have enacted a statute limited to a burglary definition which today is retained by only two of the 50 states, Maryland and Virginia. *Id.* at 530.

For the statute to apply to any burglary in any other state, the court would have to look at the facts of the particular case, clearly proscribed by the Ninth Circuit in *Sherbondy, supra,* as involving mini-trials long after the event, so as to be able to determine whether one or more of the common-law elements had been satisfied.

On January 27, 1989, this court entered its oral ruling that the common law definition should be applied, based upon its independent analysis of the legislative history and the cases decided prior thereto. *Chatman* reaffirmed this court's ruling, but did not eliminate all of the court's concerns, some of which are reflected in the decisions of other circuits noted above. This court continues to hold that only those burglaries which meet the common law definition, or which otherwise fall within the language of § 924(e), can be utilized to enhance sentences under § 924(e). Accordingly, this court must find that second degree burglary, as defined in RCW 9A.52.-030, cannot be utilized by the Government as a means of enhancing a sentence under § 924(e) solely on the basis that it is within the category "burglary." Clearly, if Congress desires to include burglaries with elements other than those of common law burglary, it is free to so legislate.

There remains the question whether second degree burglary falls within the remainder of the definition of "violent felony" in subsection (ii), i.e., does it otherwise involve conduct that presents a serious potential risk of physical injury to another. On the basis of *United States v. Sherbondy,* 865 F.2d 996 (9th Cir.1988), it does not. As *Sherbondy* stated:

> The second part of subsection (ii), the "otherwise" clause, is the generalized version of this categorical approach; it refers to other unspecified categories of offenses that present a serious potential risk of physical injury to another. We do not view the "otherwise" clause as an indication by Congress of its intention to abandon the categorical approach it uses throughout the section in favor of one that requires courts to examine individual acts in the case of the unspecified

offenses; rather we construe it as an attempt to set forth a general description that serves to expand the intended categories beyond the four explicitly listed. *Id.* at 1008. As examples of such crimes, the court identified manslaughter and kidnapping.

Nor does *Sherbondy* permit, as the Government has urged, an examination of the specific circumstances of defendant's prior second degree burglary convictions to determine whether they posed such a potential threat of harm to persons. As the *Sherbondy* court further explained:

> it is unlikely that Congress would implicitly authorize, without any express language in FOPA, ad hoc mini-trials regarding an individual's prior criminal conduct. The problems with such hearings are evident. Witnesses would often be describing events years past. Such testimony is highly unreliable. As in Sherbondy's case, the witnesses might be persons who did not even testify at the earlier criminal proceeding. In many cases, witnesses to the events in question might be unavailable altogether. Additionally, there would likely be substantial problems with court records and transcripts relating to earlier convictions. These problems become especially difficult in a case like Sherbondy's where, because the conviction was based on a guilty plea, there is little or no contemporaneous record developed. The difficulties inherent in conducting evidentiary hearings many years after the event provide additional support for our view that Congress intended judges considering sentences under FOPA to determine only whether the statutory or common law offenses to which the individual was previously convicted are ones that are covered by by [sic] section 924.

*Id.* at 1008.

In conclusion, due to the ambiguity in § 924(e), and the limited guidance offered by the legislative history, coupled with the recent Ninth Circuit decision in *Chatman,* the rule of lenity requires this court to construe § 924(e) in favor of the accused. "Where the language of a penal statute

admits of more than one interpretation, courts should choose the least harsh construction, the one least likely to impose penalties Congress did not intend." *Id.* at 1009 (citing *United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971)). Accordingly, this court holds that second degree burglary, as defined in RCW 9A.52.030, does not meet the definition in either subsection (i) or subsection (ii) for a crime of violence. Therefore, defendant's prior second degree burglary convictions cannot be used for purposes of enhancing his sentence under 18 U.S.C. § 924(e).

IT IS SO ORDERED. The Clerk is directed to enter this Order and furnish copies to counsel.