UNITED STATES of America, Appellee,

v.

Lamar PORTWOOD a/k/a Michael Tucker, Appellant.

UNITED STATES of America, Appellee,

v.

James Jerry BLACK, Appellant.

Nos. 88–1149, 88–1232.

United States Court of Appeals, Eighth Circuit.

Submitted June 15, 1988.

Decided Sept. 29, 1988.

Rehearing and Rehearing En Banc Denied Dec. 13, 1988.

James C. Delworth, Federal Public Defender, St. Louis, Mo., for appellants.

David M. Rosen, Asst. U.S. Atty., St. Louis, Mo., for appellee.

Before McMILLIAN and BOWMAN, Circuit Judges, and FLOYD R. GIBSON, Senior Circuit Judge.

McMILLIAN, Circuit Judge.

Lamar Portwood (No. 88–1149) and James Jerry Black (No. 88–1232) appeal from judgments entered in the District Court[1] for the Eastern District of Missouri upon jury verdicts finding them guilty of possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g). The district court enhanced their sentences under 18 U.S.C. § 924(e) because of their prior convictions. Their cases have been consolidated for appeal. For reversal, Portwood and Black argue that the district court erred in concluding that their prior convictions for burglary second degree under Missouri law qualified them for enhanced punishment under 18 U.S.C. § 924(e). Portwood additionally argues that the district court erred in denying his motion to suppress evidence. For the reasons discussed below, we affirm.

I

The only facts relevant to the issues raised on appeal involve the stop and search of Portwood. On August 3, 1987, St. Louis police officers John McKenzie and Tim Cavanaugh were on patrol in a marked police vehicle in metropolitan St. Louis during the morning hours. At about 8:17 a.m., while driving east on James Cool Papa Bell avenue they observed a car fail to come to a complete stop at the stop sign on the corner of James Cool Papa Bell and Glasgow. The car made a left turn onto Glasgow and McKenzie decided to go after the car and stop it. The officers then followed the car for several blocks before pulling it over. As the officers exited their car and approached the car they had pulled over, McKenzie recognized the driver and front seat passenger from previous encounters. McKenzie did not recognize Portwood, however, who was the sole occupant of the back seat of the car. The driver of the car was unable to comply with the officers' request for a driver's license and was placed under arrest. McKenzie then told Portwood to put his hands on the seat in front of him because he observed a shiny object between Portwood's legs. As Portwood placed his hands out in front of him, McKenzie noticed a pistol cartridge fall to the floor of the car. McKenzie then ordered Portwood out of the car, where a search revealed a .38 caliber revolver in Portwood's shorts.

II

■ Portwood argues that the district court erred in denying his motion to suppress the evidence obtained at his arrest as the fruit of an unconstitutional stop of the car in which he was riding. As a threshold matter, the government initially contends that Portwood lacks standing to challenge the search under *Rakas v. Illinois*, 439 U.S. 128, 148–49, 99 S.Ct. 421, 433, 58 L.Ed.2d 387 (1978). The Court in *Rakas* held that a mere passenger in an automobile ordinarily does not have the legitimate expectation of privacy necessary to challenge a search of that automobile. In *United States v. Durant*, 730 F.2d 1180, 1182 (8th Cir.1984), however, we held that where the passenger is ordered out of the car and frisked, he or she "can contest the legality of the stop and frisk." We further concluded that under these circumstances, "[a]ny evidence attained as a direct result of an illegal stop would be inadmissible under the 'fruit of the poisonous tree doctrine' of *Wong Sun v. United States*, 371 U.S. 471, 484–85, 83 S.Ct. 407, 415–16, 9 L.Ed.2d 441 (1963)." *Id.* Accordingly, Portwood has standing to challenge the legality of his stop and search.

On the merits, Portwood claims that the stop and search was unreasonable under the fourth amendment because it was both pretextual and arbitrary. Portwood asserts that the stop was pretextual because the traffic violation was not the true reason for the stop. Portwood bases this argument on the fact that (1) the officers followed the car for several blocks before pulling it over, (2) McKenzie knew both occupants of the front seat, (3) the officers

1. The Honorable Edward L. Filippine, United States District Judge for the Eastern District of Missouri.

arrested the driver of the car almost immediately, and (4) the police report inaccurately specified the location of the stop.

 Although we agree that pretextual stops are unreasonable under the fourth amendment, *see Warren v. City of Lincoln,* 816 F.2d 1254 (8th Cir.1987), this was not a pretextual stop. Whether a stop is pretextual is a question of fact for the finder of fact. *Id.* at 1257. We will not disturb the district court's finding that this search was not pretextual unless it is clearly erroneous. We are not in a position on this record to find clearly erroneous the district court's conclusion that the stop was not pretextual. McKenzie testified that he did not recognize the two front seat occupants of the car until after he had stopped it. The driver was placed under arrest because he had no driver's license. The officers delayed several blocks before pulling the vehicle over because it took that long to catch up to the car; because the violation occurred in a residential area, the officers did not believe that a high speed pursuit was justified. Under these circumstances, Portwood's argument that the stop was pretextual is nothing more than conjecture.

 Portwood also argues that the stop violated the fourth amendment because it was arbitrary. Portwood bases this argument on the fact that McKenzie testified: "I probably don't stop every vehicle that I see violate every traffic law, no." This answer hardly supports Portwood's argument that the search was arbitrary; McKenzie stopped the car in which Portwood was riding because it violated a traffic law, not because he did not like the way it looked, or some other arbitrary reason. We decline Portwood's invitation to hold that unless a police officer stops everyone who runs a stop sign, he may not stop anyone who runs a stop sign. The district court did not err in denying Portwood's motion to suppress.

## III

We next consider the point argued jointly by Portwood and Black: whether a prior conviction under Missouri law for burglary second degree may be used to enhance punishment under 18 U.S.C. § 924(e). Both Portwood and Black received enhanced punishment based on prior convictions in Missouri for burglary second degree. This crime is defined in Missouri as "knowingly enter[ing] unlawfully or knowingly remain[ing] unlawfully in a building or inhabitable structure for the purpose of committing a crime therein." Mo.Rev.Stat. § 569.170. Title 18 U.S.C. § 924(e) provides an enhanced penalty for those convicted of being felons in possession of a firearm in violation of 18 U.S.C. § 922(g) who have three previous convictions for "a violent felony or a serious drug offense." "Violent felony" is defined in the statute as follows:

> the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—
>
> (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or
>
> (ii) *is burglary,* arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another.

18 U.S.C. § 924(e)(2)(B) (emphasis added).

Appellants argue that the word "burglary," as used in § 924(e)(2)(B)(ii), is ambiguous as to whether or not it includes burglary second degree in Missouri. This is because Congress did not define the term "burglary," and the term now is used to describe a wide variety of property crimes. The ambiguity in § 924(e), according to appellants, requires resort to the legislative history of the statute, which in turn should lead us to conclude that "properly construed," the term "burglary" in § 924(e) does not include "burglary second degree" under Missouri law.

 We commend appellants' counsel for his energetic and spirited presentation of the issue, but we find very little ambiguity on the face of the statute and, thus, no occasion to explore the legislative history. In our view, the statute says "burglary," and we take that to mean "burglary,"

however a state may choose to define it.[2] Congress could quite reasonably conclude that no matter what the felon's intent upon breaking in, the property owner may return, a neighbor may investigate, or a law enforcement official may respond. All of these scenarios present a grave threat of harm to persons. A person with three prior convictions for burglary, regardless of the details of each burglary, presents the type of potential threat to society that Congress sought to control by the enactment of § 924(e). We hold that the district court did not err in concluding that appellants' prior convictions for burglary second degree under Missouri law qualified them for enhanced punishment under § 924(e).

Accordingly, the judgments of the district court are affirmed.

---

**2.** We need not reach the question of whether conduct that is quite similar to burglary but labeled something else would be included within the meaning of "burglary" in § 924(e). *Cf. United States v. Headspeth,* 852 F.2d 753 (4th Cir.1988) (storehouse breaking not "burglary" or offense that "involves conduct that presents a serious potential risk of physical injury to another" within 18 U.S.C. § 924(e)).