**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Darryl DOMBROWSKI,**
**Defendant–Appellant.**

No. 88–2545.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 24, 1989.
Decided June 7, 1989.

Chris Gair, David J. Stetler, Asst. U.S. Attys., Office of the U.S. Atty., Criminal Receiving, Appellate Div., Chicago, Ill., for plaintiff-appellee.

Mary Stowell, Chicago, Ill., for defendant-appellant.

Before CUDAHY and EASTERBROOK, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.

CUDAHY, Circuit Judge.

Darryl Dombrowski was convicted by a

jury of violating 18 U.S.C. section 922(g),[1] prohibiting possession of firearms by convicted felons. He received the mandatory minimum sentence of fifteen years dictated by the sentence enhancement[2] provisions of 18 U.S.C. section 924(e), which mandate enhanced sentences for persons violating section 922(g) if they have had three previous convictions for violent felonies or serious drug offenses.[3] On appeal, Dombrowski contests application of section 922(g) in his case as unconstitutional and further claims that his previous convictions were for burglaries not properly encompassed by section 922(g). He also argues that the trial court committed reversible error in limiting cross-examination of a key witness and in admitting a photograph into evidence. We affirm.

### I.

Between 12:45 and 1:00 a.m. on January 23, 1987, Chicago Police Sergeant Harold Dennis received a radio call reporting that a man was firing a gun behind a building at the corner of Touhy and Ridge Avenues. The man was described as a white male wearing a tan coat. Dennis proceeded to drive down Touhy Avenue to an alley behind the building at the corner of Touhy and Ridge. Dennis testified that he stopped his car when it was "in the mouth of the alley. Part of it was in the alley, and the other part was in the street." Trans. at 6–7. At that time Dennis observed a man he later identified as the defendant, twenty-five feet away, walking toward him down the alley. Dennis

---

1. It shall be unlawful for any person—

 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;

 . . . . .

 to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

 18 U.S.C. § 922(g).

2. In *United States v. Dickerson,* 857 F.2d 414 (7th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1753, 104 L.Ed.2d 189 (1989), this court construed section 924(e)(1) as a sentence enhancement provision. *See also United States v. Lowe,* 860 F.2d 1370 (7th Cir.1988); *United States v. Karlin,* 852 F.2d 968 (7th Cir.1988); *United States v. Pirovolos,* 844 F.2d 415 (7th Cir.1988). There was initially some conflict among the circuits on the issue whether the predecessor to section 924(e)(1) (section 1202(a)(1)) created a new offense or merely provided for sentence enhancement. In *United States v. Davis,* 801 F.2d 754 (5th Cir.1986), the Fifth Circuit determined that section 1202(a)(1) created a new offense. A Sixth Circuit panel reached a similar conclusion in *United States v. Brewer,* 841 F.2d 667 (6th Cir.1988). However, most of the circuits subsequently concluded that section 1202(a)(1) was merely a sentence-enhancement provision. *United States v. Rush,* 840 F.2d 574 (8th Cir.) (en banc), *cert. denied,* — U.S. —, 108 S.Ct. 2908, 101 L.Ed.2d 940 (1988), *cert. denied sub nom. Cloyd v. United States,* — U.S. —, 108 S.Ct. 2910, 101 L.Ed.2d 942 (1988); *United States v. Blannon,* 836 F.2d 843 (4th Cir.), *cert. denied* — U.S. —, 108 S.Ct. 1741, 100 L.Ed.2d 204 (1988); *United States v. West,* 826 F.2d 909 (9th Cir.1987); *United States v. Jackson,* 824 F.2d 21 (D.C.Cir.1987), *cert. denied,* — U.S. —, 108 S.Ct. 715, 98 L.Ed.2d 665 (1988); *United States v. Hawkins,* 811 F.2d 210 (3d Cir.), *cert. denied,* — U.S. —, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987); *United States v. Gregg,* 803 F.2d 568 (10th Cir.1986), *cert. denied,* 480 U.S. 920, 107 S.Ct. 1379, 94 L.Ed.2d 693 (1987). The Sixth Circuit, sitting en banc, subsequently overturned the earlier panel decision in *Brewer. United States v. Brewer,* 853 F.2d 1319 (6th Cir.) (en banc) (vacating and setting aside earlier panel decision that 1202(a)(1) was separate offense), *cert. denied,* — U.S. —, 109 S.Ct. 375, 102 L.Ed.2d 364 (1988). The First Circuit has now adopted the reasoning of the other circuits as well. *United States v. Rumney,* 867 F.2d 714 (1st Cir.1989) (analyzing 1202(a)(1) as recodified). A recent opinion from the Fifth Circuit has distinguished section 924(e)(1) from its predecessor, holding that the section as amended is now clearly a sentence enhancement provision. *United States v. Affleck,* 861 F.2d 97 (5th Cir.1988), *cert. denied,* — U.S. —, 109 S.Ct. 1325, 103 L.Ed.2d 593 (1989); *see also United States v. Quintero,* 872 F.2d 107 (5th Cir.1989). Thus the earlier conflict appears to have ironed itself out.

3. In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

 18 U.S.C. § 924(e)(1).

stepped out of the car, calling to the subject to stop. The man approached to within approximately eight feet of Dennis, who was standing behind the open door of his squad car. Dennis and the subject then simultaneously reached for and drew their guns. Dennis testified that the man never actually pointed the gun at him, but drew it to chest level and then turned and ran out of the alley onto Touhy Avenue in an easterly direction.

After radioing for assistance, Dennis pursued the subject, who by then had turned to the south down a gangway between two buildings. Dennis testified that he saw the subject's face again when the man turned, at a distance of 40 or 50 feet down the gangway, to look back. The subject then threw an object to the ground and continued his flight, turning westward through a parking lot. Dennis proceeded down the gangway and observed a black steel automatic pistol lying in a snowdrift in the area in which he had seen the subject throw an object to the ground. Still radioing instructions to approaching police units, Dennis continued in pursuit long enough to see the subject disappear into a gangway leading out onto Ridge Avenue. Immediately after he finished relaying this information on the radio, an officer replied by radio, "We have him." That officer, Patrick Garrity, had been driving on Touhy Avenue eastbound toward the intersection of Touhy and Ridge, and had observed the defendant on the southeast corner of the intersection walking rapidly away to the northwest. Garrity and his partner pursued and arrested the defendant, and immediately "took him around the corner to an alley" where Sergeant Dennis identified him as the subject he'd seen earlier. Trans. at 57. Dennis subsequently recovered six spent shell casings from behind the building at Touhy and Ridge.

## II.

### A.

Dombrowski first argues that the trial court committed reversible error when it limited the scope of the defendant's cross-examination of Sergeant Dennis. This argument rests on the following exchange:

DEFENDANT'S COUNSEL: Do you still make street arrests?

DENNIS: I have occasions to make arrests, yes.

DEFENDANT'S COUNSEL: Now, just give your best estimate, if you would, of the number of people you arrested in 1987.

GOVERNMENT: Objection.

THE COURT: Sustained.

DEFENDANT'S COUNSEL: Is it fair to say you arrest over 50 people a year, Sergeant?

GOVERNMENT: Objection.

THE COURT: Sustained.

Trans. at 28. Defense counsel proceeded to question Dennis about his duties as a sergeant. On appeal the defendant argues that this limitation of the examination constituted error; he further argues that the error was not harmless because it violated the rights guaranteed him under the sixth amendment's confrontation clause.

The Supreme Court has indeed held that "a primary interest secured by [the confrontation clause] is the right of cross-examination." *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed. 2d 347 (1974) (quoting *Douglas v. Alabama*, 380 U.S. 415, 418, 85 S.Ct. 1074, 1076, 13 L.Ed.2d 934 (1965)). Of course, the trial court may, in its discretion, impose some limitations on cross-examination, as long as those limitations do not interfere in any substantial way with this sixth amendment right. *See United States v. DiCaro*, 852 F.2d 259, 261–62 (7th Cir.1988); *United States v. Wellman*, 830 F.2d 1453, 1464–65 (7th Cir.1987). Relatively minor limitations on cross-examination do not generally impinge upon sixth amendment rights where the issue counsel sought to illuminate through cross-examination has been adequately explored elsewhere, *United States v. Rodgers*, 755 F.2d 533, 548 (7th Cir.), *cert. denied*, 473 U.S. 907, 105 S.Ct. 3532, 87 L.Ed.2d 656 (1985); *United States v. Muelbl*, 739 F.2d 1175, 1185 (7th Cir.), *cert. denied*, 469 U.S. 982, 105 S.Ct. 388, 83 L.Ed.2d 322 (1984), or where cross-exami-

nation exposes enough evidence "to enable the jury to evaluate [the defendant's] theory of defense and to make 'a discriminating appraisal of the witness's motives and bias.'" *DiCaro*, 852 F.2d at 261 (quoting *United States v. DeGudino*, 722 F.2d 1351, 1354 (7th Cir.1983)); *see also United States ex rel. Ashford v. Director, Illinois Dep't of Corrections*, 871 F.2d 680, 683–84 (7th Cir.1989).

■ Defense counsel argues that the district court's limitation of her cross-examination critically hindered her efforts to impeach the prosecution's key witness. She argues that had she been able to elicit testimony about the number of arrests Dennis made, she would have been able to establish "how implausible it was for Dennis to remember the specific events of this particular arrest from among a series of arrests." Brief of Appellant at 10. However, the remainder of defense counsel's cross-examination of Dennis involved a thorough exploration of the discrepancy between the brief police report filed about the incident and Dennis' account of the incident, casting doubt on Dennis' independent recollection of events. This theme was further developed in counsel's cross-examination of Officer Garrity. Trans. at 64–68. Finally, counsel argued the very point that this was one among many arrests in her closing argument. Supp. trans. at 8. A close reading both of counsel's cross-examination of the two key government witnesses and of her closing argument reveals that counsel did an effective job of raising doubt about Dennis' ability to remember events. The additional information about the number of arrests made by Dennis in a year would not have added anything substantial to counsel's tenacious attempts to impeach Dennis' testimony.[4] The jury had the issue (of Dennis' ability to accurately recall one arrest among many) fully before it, and simply chose to credit Dennis' testimony. There was ample basis for doing so.

### B.

■ Dombrowski also urges that the trial court committed reversible error in admitting into evidence a photograph of the scene of the crime introduced by the government. The trial court's ruling on this evidentiary issue may not be reversed absent an abuse of discretion. *United States v. Fleming*, 594 F.2d 598, 607 (7th Cir.), *cert. denied*, 442 U.S. 931, 99 S.Ct. 2863, 61 L.Ed.2d 299 (1979); *see also United States v. Blackwell*, 694 F.2d 1325, 1330 (D.C.Cir.1982); *United States v. Delay*, 500 F.2d 1360, 1366 (8th Cir.1974).

Dombrowski argues alternatively that admission of the photograph violated Rule 901 of the Federal Rules of Evidence, requiring authentication of evidence prior to admission; Rule 402, excluding irrelevant information; or Rule 403, permitting exclusion of relevant information whose probative value is outweighed by "the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed.R.Evid. 403.

■ In order to authenticate the photograph, the government had to present "evidence sufficient to support a finding that the matter in question is what its proponent claims." Fed.R.Evid. 901. The government claims that the photograph accurately depicts the scene of the crime. It is apparently conceded that the photograph depicts the buildings and street surrounding the mouth of the alley into which Dennis pulled his car. It is also uncontested that the photograph was taken at night and that the crime in question occurred at night. The basis for defense counsel's original objection to introduction of the photograph at trial was that it does not "necessarily" depict with accuracy the lighting conditions on the night in question.

---

4. We note additionally that because Dennis was a supervisor, and because he had testified that he merely had "occasions to make arrests," the record as we read it suggests that, if anything, Dennis' excluded responses would likely have demonstrated that he made fewer arrests than the average police officer (and thus would perhaps have been more likely to be able to remember the details). We agree with defense counsel that it is unclear why the court chose to exclude this testimony, but the exclusion did not violate Dombrowski's sixth amendment rights.

Trans. at 24. The trial judge conceded, "What's missing here is that the conditions were the same or substantially the same when the photograph was taken as they were on January 23, 1987." *Id.* The judge accordingly asked the government to provide more foundation for the introduction of the exhibit and stated that he would allow extensive cross-examination on this point. Dennis testified that the photograph was accurate except that on the night of the crime there was snow on the ground, which made "the ground area lighter." Trans. at 26. Additionally, the photograph does not depict a car with its headlight on in the alley, and Dennis testified that he saw the defendant "in my headlights." Trans. at 7. To meet the threshold requirements of authentication, the government need only adduce "evidence sufficient to support a finding" that the photograph is what the government claims. *See United States v. Mojica,* 746 F.2d 242, 245 (5th Cir.1984) (quoting *Maudlin v. Upjohn Co.,* 697 F.2d 644, 648 (5th Cir.1983), *cert. denied,* 464 U.S. 848, 104 S.Ct. 155, 78 L.Ed.2d 143 (1984)); *see also United States v. Nolan,* 818 F.2d 1015, 1017 (1st Cir.1987) (authentication a "threshold" issue; ultimate question as to whether evidence is probative properly decided on merits). Although more evidence about the conditions under which the photograph was taken might have been desirable, Dennis' testimony provided adequate authentication. *Cf. United States v. Blackwell,* 694 F.2d 1325 (D.C.Cir.1982) (photographs authenticated if "jury could reasonably have concluded" that they are what government alleged them to be). Dombrowski has suggested no reason why general lighting conditions at the time the picture was taken were substantially different from those depicted in the picture.

▮▮▮▮ Rather, Dombrowski's main complaint on appeal seems to be that the photograph was taken from a point underneath a streetlight across Touhy Avenue from the opening of the alley. For that reason he argues that the photograph is not an accurate representation of the lighting conditions *in* the alley, which would have been darker. The objection here, then, is not that the photograph inaccurately portrays the lighting on the night of the incident because it was taken at another time, but rather that *any* photograph taken from the vantage of this one—even had it been taken at the moment Dennis saw the defendant—would not accurately convey to the jury what Dennis saw when he looked down the alley. This is a troubling claim; photographs that give the jury a distorted perspective are properly excluded as either irrelevant to the point at issue or misleading to the jury. *See United States v. Akers,* 702 F.2d 1145, 1149 (D.C.Cir.1983). The government urges that the photograph is relevant to demonstrating "the layout and lighting of the entrance to the alley" and that any distortion in the photograph is minimally prejudicial. Brief of Appellee at 12. The photograph was apparently taken from across the street from where Dennis was standing, at a point quite close to a bright streetlight. The alley, visible from across the large, well-lighted street, looks much darker than the street that occupies the foreground of the picture. Had the encounter between Dennis and the suspect occurred entirely in the alley and had the jury merely heard that the photograph depicted the "scene of the crime," admitting the photograph into evidence might well have been serious error. However, we know that Dennis encountered the suspect at the mouth of the alley, that Dennis was parked only halfway into the entrance to the alley and that the suspect passed Dennis at a distance of eight feet while emerging onto Touhy Avenue. Defense counsel was additionally given ample opportunity, which she employed during cross-examination of Dennis, to draw the "perspective" problem to the attention of the jury. Trans. at 44–45.[5] Thus, although the problem is not frivolous, there was not sufficient distortion involved here to render the photograph either irrelevant under Rule

---

5. Finally, the picture itself shows the alley as relatively dark by comparison with the brightly lighted street, so that the jury was unlikely to conclude that the lighting *in* the alley was very bright.

402 or unduly prejudicial or misleading under Rule 403.

### C.

 Finally, Dombrowski contests application of the sentencing provision of 18 U.S.C. section 924(e) in this case, arguing that such an application would violate both the eighth amendment's proportionality requirement and the fifth amendment's due process clause. There is little merit in either contention. A mandatory minimum sentence of fifteen years for a defendant with three prior felony convictions (and who has now been convicted of yet another felony) is not constitutionally disproportionate. *United States v. Sanchez*, 859 F.2d 483 (7th Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 1144, 103 L.Ed.2d 204 (1989); *United States v. Gilliard*, 847 F.2d 21 (1st Cir.1988), *cert. denied*, —— U.S. ——, 109 S.Ct. 846, 102 L.Ed.2d 978 (1989); *see also Rummel v. Estelle*, 445 U.S. 263, 100 S.Ct. 1133, 63 L.Ed.2d 382 (1980); *United States v. Jackson*, 835 F.2d 1195 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1244, 99 L.Ed.2d 442 (1988).[6] Neither does a minimum mandatory sentence of this sort deprive the defendant of due process rights. *McMillan v. Pennsylvania*, 477 U.S. 79, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986); *United States v. Oxford*, 735 F.2d 276 (7th Cir.1984).

However, Dombrowski makes an additional, more compelling argument based on the language of section 924(e), which provides for a harsher sentence where a defendant has "three previous convictions for a violent felony or a serious drug offense, or both...." 18 U.S.C. § 924(e)(1). "Violent felony" is further defined as

any crime punishable by imprisonment for a term exceeding one year that

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of injury to another.

18 U.S.C. § 924(e)(2)(B). The word "burglary" is not further defined by the statute. Dombrowski points out that his three prior felony convictions were for unarmed, nonviolent commercial "burglaries."[7] He would have us conclude that these kinds of prior convictions, for actions that purportedly did not pose a serious risk of injury to others, do not fall within the ambit of section 924.

Indeed, the omission of a definition of "burglary" from section 924 does create an interpretive problem. Section 924 derives from an earlier statute, the Armed Career Criminal Act of 1984, which imposed a minimum fifteen-year sentence for "a person who receives, possesses, or transports in commerce ... any firearm and who has three previous convictions by any [state or federal] court ... for robbery or burglary, or both...." 18 U.S.C. § 1202(a) (repealed). "Burglary" was defined in the 1984 Act as "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." The sentence enhancement provision of section 1202(a) was in 1986 recodified as 18 U.S.C. section 924(e). In May of 1986 both the House of Representatives and the Senate began hearings aimed at enlarging the enumerated predicate offenses for section 924(e). However, in the subsequently adopted amendment, dubbed the Career Criminal Amendments Act of 1986 ("CCAA"), the old broad definition of "burglary" was omitted and no new definition was included

---

**6.** *Solem v. Helm*, 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983), in which the Supreme Court held constitutionally disproportionate a life sentence without parole for cashing a $100 bad check is easily distinguishable from this case, involving a fifteen-year sentence for a firearm conviction that followed three prior burglary convictions.

**7.** The government reminds us of a fourth prior conviction in Colorado, for aggravated robbery, for which Dombrowski received a sentence of eight years. Brief of Appellee at 17; *see* Trans. at 84. Because we find that commercial burglaries are included under section 924(e), the relatively violent or nonviolent nature of prior felony convictions is not at issue here.

in its place. This development has left a puzzle in statutory interpretation.

The courts of appeals have taken quite different approaches to the difficulty. On the principle that "[w]hen Congress uses a common law term like burglary in a federal criminal statute without otherwise defining it, Congress is presumed to adopt the meaning given that term at common law," *United States v. Headspeth*, 852 F.2d 753, 757 (4th Cir.1988) (citing *Morrissette v. United States*, 342 U.S. 246, 263, 72 S.Ct. 240, 250, 96 L.Ed. 288 (1952)), the Fourth Circuit has adopted the common law definition of burglary in applying section 924(e). The Fourth Circuit's common law definition encompasses only "the breaking and entering of the dwelling house of another, in the nighttime, with the intent to commit a felony within," *Headspeth*, 852 F.2d at 757, and so would not include the commercial burglaries involved in the case before us. *Headspeth* also drew upon the legislative history behind section 924(e), which in the court's view indicated that Congress had intentionally omitted a new definition for "burglary" because it wished to "revert to the narrow common law definition of burglary in the amended statute." *Id.* at 758. The Ninth Circuit has recently followed *Headspeth's* reading of the legislative history and adopted the common law definition. *United States v. Chatman*, 869 F.2d 525 (9th Cir.1989); *see also United States v. Harkey*, 709 F.Supp. 977 (E.D.Wash. 1989) (employing common law definition).

By contrast, the Eleventh Circuit has concluded that omission of a definition of "burglary" from the amended statute did not indicate an intent to narrow the previous definition. *United States v. Hill*, 863 F.2d 1575 (11th Cir.1989). In *Hill*, Judge Kravitch's review of the provision's legislative history resulted in a different reading: "Our review of the legislative history suggests that Congress intended that any burglary that would have met the definition of burglary under the previous act would fall within the meaning of burglary in the amended version." *Id.* at 1582. The Third Circuit has now followed the Eleventh Cir-

cuit's approach, reverting to "the generic definition that explicitly existed prior to [the] amendment." *United States v. Palmer*, 871 F.2d 1202, 1208 (3d Cir.1989).

The Fifth Circuit has adopted a still more expansive approach, holding that "a conviction for a crime which the state denominates 'burglary' is a conviction for burglary within the meaning of § 924(e)(2)(B)(ii)." *United States v. Leonard*, 868 F.2d 1393, 1399 (5th Cir.1989). *See also United States v. Portwood*, 857 F.2d 1221, 1223 (8th Cir.1988) (adopting state-by-state approach on "plain language" rationale); *United States v. Taylor*, 864 F.2d 625 (8th Cir.1989) (reaffirming *Portwood* approach).

Finally, a recent First Circuit opinion essentially declines to take a position on the "burglary" issue: "We frankly cannot divine how Congress intended to define burglary." *United States v. Patterson*, 882 F.2d 595 (1st Cir.1989).[8]

The defendant here actually raises two distinct issues: (1) does the general emphasis on "violent" crime in the amended statute limit application of section 924(e) to cases in which prior convictions were for crimes that posed a threat of physical harm (thus requiring courts to conduct a case-by-case inquiry into the nature of prior offenses); and (2) even if the statute does not mandate this kind of individualized inquiry, does the word "burglary" in section 924(e)(2)(B) include commercial burglaries, which would not be encompassed by the common law definition?

This court addressed the first of these questions in *United States v. Dickerson*, in which we concluded that "if Congress intended to include only crimes in which serious physical injury was involved, it would have worded the statute to say 'burglary, arson, or extortion, *and* involves use of explosives or otherwise involves conduct that presents a serious risk of physical injury to another'" [in contrast to using the disjunctive "or"]. 857 F.2d at 419. Thus, if the prior crimes come within the stated categories "burglary, arson, or extortion," it does not matter whether they

---

**8.** The original opinion in *Patterson* which was filed on April 26, 1989 was withdrawn on other grounds and this Aug. 23 opinion was substituted.

were violent; the court is not required to conduct an individualized inquiry whether each prior offense involved the potential for violence. *Accord United States v. Leonard,* 868 F.2d 1393 (5th Cir.1989); *United States v. Sherbondy,* 865 F.2d 996, 1009–10 (9th Cir.1988).

However, the second question—whether commercial burglary is included within section 924(e)—remains. *Dickerson* did not resolve this issue, because the defendant in that case had prior convictions for residential burglary, which would qualify under either the common law or the broader definition of burglary. We must therefore resolve for this circuit the problem that generated the split between the Fourth and Ninth Circuits' decisions in *Headspeth* and *Chatman,* on the one hand, and the Eleventh Circuit's decision in *Hill* (expanded upon by the Fifth Circuit in *Leonard*). Although one court has resolved the difficulty through a reading of the "plain" language of the statute, *United States v. Portwood,* 857 F.2d 1221, 1223 (8th Cir. 1988) ("the statute says 'burglary,' and we take that to mean 'burglary,' however a state may choose to define it."), we agree with the other courts of appeals that have addressed the issue that the wording of the statute alone gives insufficient guidance. Like them, we turn to the legislative history for direction.[9]

The amendment that was eventually adopted as the CCAA developed from parallel bills considered by the House and the Senate. *See Armed Career Criminal Act Amendments: Hearing on S.2312 Before the Subcomm. on Criminal Law of the Senate Comm. on the Judiciary,* 99th Cong., 2d Sess. (1986) [hereinafter Senate Hearing]; *Armed Career Criminal Legislation: Hearing on H.R. 4639 and H.R. 4768 Before the Subcomm. on Crime of the House of Representatives Comm. on the Judiciary,* 99th Cong., 2d Sess. (1986) [hereinafter House Hearing]. The legislative history from the Senate is straightforward. Senator Specter, the sponsor of the Senate bill, was very clear about the purpose of the amendment:

> We have found ... that there is a need to broaden the so-called predicate crimes to include drug violations and certain other predicate acts....

> When the bill was first introduced in 1981, a more restrictive definition of career criminal was then incorporated.... But now that the bill has been in effect for a year and a half and has been successful with the basic classification of robberies and burglaries as the definition for "career criminal," the time has come to broaden that definition.

132 Cong.Rec. S4325 (daily ed. April 16, 1986). These comments echo Senator Specter's earlier remarks at the Senate Hearing, Senate Hearing at 1, as well as those of the witnesses upon whom the subcommittee relied in preparing the bill. Senate Hearing at 8–9 (statement of James Knapp, Deputy Assistant Attorney General, U.S. Dep't of Justice) ("S.2312 would expand the coverage of the act by broadening the class of predicate crimes"); Senate Hearing at 19–20 (statement of David Queen, Deputy Assistant Secretary for Enforcement, U.S. Dep't of the Treasury) ("We cannot limit our efforts against violence to just the burglar and the robber. The same message must go out to the rapist, the gangland enforcer, or to any professional violent offender."); Senate Hearing at 49 (statement of Ronald Castille, District Attorney, Philadelphia) (supporting amendment as "expansion of the predicate offenses to include violent crime and serious drug of-

9. Although the Fourth Circuit in *Headspeth* stated that it was presumptively adopting the common law definition of burglary, it also engaged in a review of the legislative history (which in the court's view supported adoption of the common law definition). 852 F.2d at 757–58. And, indeed, in *Morisette v. United States,* 342 U.S. 246, 72 S.Ct. 240 (upon which *Headspeth* relies in adopting the presumption in favor of common law definitions), the Supreme Court also provided a lengthy and detailed review of the applicable legislative history. 342 U.S. at 263–73, 72 S.Ct. at 249–55. The Court viewed the legislative history in that case as entirely consonant with retention of the common law definition. By contrast, the legislative history of section 924 does not support adoption of a common law definition and so, like the Eleventh Circuit, we decline to "mechanically apply the common law definition" where "it is apparent that Congress intended something else." *Hill,* 863 F.2d at 1578.

fenses"). There can be little doubt that the legislative history in the Senate indicates an intent to retain the original, broad statutory definition of burglary.

However, the Fourth Circuit relied on the legislative history in the House in reaching its conclusion that a narrower definition was indicated. *Headspeth*, 852 F.2d at 757–58. The House Subcommittee considered two different proposals, one introduced by Representative Wyden and the other by Representatives Hughes and McCollum. The proposals differed in their definitions of "crime of violence" or "violent felony." The Wyden definition read:

'crime of violence' means—

"(A) an offense that has as an element the use, attempted use, or threatened use of physical force against the person *or property* of another; or

"(B) any felony which, by its nature, involves a substantial risk that physical force against the person *or property* of another may be used in the course of committing the offense.".

House Hearing at 4 (emphasis added). The Hughes/McCollum definition read:

'violent felony' means any State or Federal felony that has as an element the use, attempted use, or threatened use of physical force against the person of another.

House Hearing at 6. During the subsequent hearings, the Hughes/McCollum definition met criticism on the ground that, in *excluding crimes against property*, it might exclude "such serious felonies against property as most burglary offenses," thus "inadvertently narrow[ing] the scope of the present Armed Career Criminal Act." *Id.* at 15 (statement of James Knapp, Deputy Assistant Attorney General, U.S. Dep't of Justice). The Fourth Circuit in *Headspeth* concluded that the omission of a definition of burglary from the final version of the bill indicated something of a compromise between the two positions: "This omission, viewed in light of the efforts to remove burglary altogether from the list of predi-

cate offenses, suggests that Congress intended to revert to the narrow common law definition of burglary in the amended statute." 852 F.2d at 758. *Accord Chatman*, 869 F.2d at 528 ("The final version sought to bridge the gap between those who would include a wide variety of property crimes and those who would include only offenses with an element of force against the person.").

There is some support for this conclusion. Representative Hughes initially stated, in responding to criticism, that burglary was not inadvertently omitted, but was omitted deliberately from his proposal because he wished to focus upon violent crimes only. House Hearing at 26. However, in subsequent discussions with witnesses, Representative Hughes conceded that the statute as framed would by definition only encompass burglars subsequently caught in possession of firearms, and later commented:

Frankly, I think on the question of burglaries, I can see the arguments both ways. We have already included burglaries.

My leanings would be to leave it alone; it is in the existing law; it was the existing statute. We can still be specific enough.... we are not talking about the average run-of-the-mill burglar necessarily, we are talking about somebody who also illegally possesses or has been transferred a firearm.

Those are my feelings. What are your feelings?

*Id.* at 41. The co-author of the proposal, Representative McCollum, responded, "I would agree with those," and Representative Hughes concluded, "All right. Why don't we try to develop some language to do that?" *Id.* at 41. From this exchange, it is apparent that inclusion of the word "burglary" in the final bill reflected an intention, even on the part of those who were originally inclined to be restrictive, to include burglaries as defined in the original version of the statute in its amended version.[10]

---

**10.** The First Circuit in *Patterson* characterizes omission of the older definition of "burglary" as "intentional," but does not cite to any portion of the legislative history to support this characterization. The 1984 Act provided that a defendant with three previous convictions for robbery or

Further, like the Senate hearing, the House hearing abounds with comments that demonstrate that the goal of introducing the CCAA was to expand upon the existing predicate offenses rather than to limit them. In opening the hearings, Representative Hughes framed the question in this way: "[W]e should now consider whether we should expand the predicate offenses, robbery and burglary, in existing law in order to add to its effectiveness...." House Hearing at 1–2. Representative McCollum noted, in a similar vein, "I support your decision to expand this measure, which now covers burglary and robbery, to include other serious violent crimes." *Id.* at 7. This was clearly also the intent of the author of the Wyden proposal, which contained broad language including crimes against property as predicate offenses. When the bill was eventually reported to the House of Representatives, it included as predicate offenses any crimes punishable by imprisonment for terms exceeding one year that "involve conduct that presents a serious potential risk of physical injury to another," and the Report clearly states that this provision "adds all State and Federal felonies against property such as burglary." H.R.Rep. No. 849, 99th Cong., 2d Sess. 4–5 (1986). The final version of the CCAA made this point explicit, including as a predicate offense

any crime punishable by a term exceeding one year that "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B).

The legislative history, then, indicates that there was no question about the scope of the word "burglary" once it was decided that burglaries should be included in the statute. The term "burglary" in section 924(e)(2)(B) was intended to encompass "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense," and the commercial burglaries of which Dombrowski was convicted certainly qualify.[11] We do not know why this explicit definition of burglary was deleted from the statute as amended. Perhaps this was mere inadvertence; but, in any event, we think the intent was to carry forward the prior definition—even if not explicitly stated.

The result of this analysis may be harsh—a mandatory minimum fifteen-year sentence for the firing of a gun, randomly and without consequent damage to persons or property, by a defendant whose prior offenses did not for the most part involve any weapons or likelihood of injury to per-

---

burglary would be subject to the sentence enhancement provision. It also included a distinct provision defining "burglary." The 1986 Act was designed to broaden the description of predicate crimes to violent felonies generally, so that the generic term "violent felony" consequently replaced "robbery" and "burglary" in the amended Act. Section 924(e)(2)(B)(ii) is the new definitional provision, giving a definition for "violent felony," and arguably replacing the older section providing a definition for "burglary." When some debate arose over the new definitional provision, the word burglary was reinserted to make it absolutely clear that burglaries were still included in the new definition. However, it seems entirely possible that omission of the old definition was an uncalculated by-product of the revision process. In any case, there is no indication in the legislative history that omission of the earlier definition was the result of a deliberate intent to alter the definition of "burglary" under the Act; indeed, as we have noted, indications are to the contrary.

**11.** We thus follow *Hill* rather than *Leonard*, for under the earlier statutory definition not all state crimes denominated "burglaries" would

suffice. Only if the previous felonies involved entering or remaining surreptitiously within a *building* that is property of another with intent to commit a federal or state offense (and only if that felony resulted in a sentence of more than a year) would they qualify as burglaries under the statute. This would resolve the problem faced by the Ninth Circuit in *Chatman,* in which the prior offenses were "auto burglaries." The Ninth Circuit's refusal to apply section 924(e) reflected an accurate perception that Congress did not intend prior convictions for unarmed auto burglaries to trigger the sentence enhancement provision; however, in our view, neither did Congress intend to revert to an archaic common law definition. *Accord Chatman,* 869 F.2d at 530–31 (O'Scannlain, J., dissenting). Taking the "middle road" between adopting any state definition of burglary and reverting to the common law definition not only accords better with the legislative history; it also provides some measure of national uniformity, which would be abandoned entirely were we to adopt state definitions *tout court.*

sons.[12] The district court's imposition of the minimum sentence may well reflect its awareness of this. However, whatever our view of the matter, Congress has spoken and it "is not our business," *In re Thompson*, 867 F.2d 416, 422 (7th Cir.1989), to rewrite legislative history, however unfortunate the result.

### III.

Neither the district court's limitation of the defendant's cross-examination nor its admission into evidence of the government's photograph constituted reversible error. Application of section 924 in this case was consonant with legislative intent and did not violate the defendant's eighth or fifth amendment rights.

AFFIRMED.

---

**12.** Three of the defendant's prior offenses were "burglaries" under Illinois law (specifically, under Ill.Rev.Stat. ch. 38 § 19–1, which provides that "[a] person commits burglary when without authority he knowingly enters or without authority remains within a building, housetrailer, watercraft, aircraft, motor vehicle ... or any part thereof, with intent to commit therein a felony or theft."). Dombrowski's prior offenses included (1) a guilty plea when he was seventeen years old and was arrested unarmed inside a liquor store at 4:30 a.m.; (2) another guilty plea when he was seventeen years old for burglarizing a pizza restaurant, again unarmed; (3) a guilty plea three years later, in 1977, this time for burglarizing a supermarket (and once more apparently no weapons were involved); and (4) a 1982 conviction in Colorado for aggravated robbery. Arguably only the last of these was the sort of violent crime that posed a substantial risk of physical injury to another. However, the first three offenses involved entering buildings with intent to engage in conduct constituting an offense (burglary) in Illinois, and our review of the legislative history indicates that they should qualify under section 924(e)(2)(B)(ii).