**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Randall Scott SILKWOOD,**
**Defendant–Appellant.**

No. 88–2096.

United States Court of Appeals, Tenth Circuit.

Dec. 28, 1989.

---

246

Susan L. Foreman (Michael Gordon Katz, Federal Public Defender, with her, on the briefs), Denver, Colo., for defendant-appellant.

Roger Hilfiger, U.S. Atty., and Sheldon J. Sperling, Asst. U.S. Atty., Muskogee, Okl., on the brief, for plaintiff-appellee.

Before MOORE, McWILLIAMS, and ANDERSON, Circuit Judges.

JOHN P. MOORE, Circuit Judge.

Randall Silkwood appeals his conviction for unlawful possession of a firearm by a convicted felon in violation of 18 U.S.C. § 922(g)(1) as well as his enhanced sentence of twenty-five years without parole, imposed pursuant to 18 U.S.C. § 924(e)(1). Mr. Silkwood claims that the trial court erred when it denied his motion to suppress the firearm which he was convicted of possessing and his motion for production of certain *Brady* material. He also asserts that the trial court abused its discretion by denying his motions for a mistrial based on the testimony of one of the Government's witnesses and on the prosecutor's com-

ments on his failure to testify. Finally, he claims that at the sentence enhancement proceeding, he was denied both his rights to counsel and to due process. We reject Mr. Silkwood's assignments of error with respect to his conviction. We hold, however, that he was improperly denied counsel at the sentence enhancement proceeding. We, therefore, remand this case to the trial court for resentencing and direct that court to appoint counsel to represent Mr. Silkwood unless, after proper inquiry, Mr. Silkwood waives that right.

## I.  FACTS

On December 9, 1987, Trooper Randy Moore stopped Mr. Silkwood in Durant, Oklahoma, for driving 67 m.p.h. in a 55 m.p.h. zone. Trooper Moore signaled Mr. Silkwood to leave his van. When they met between the two vehicles, Mr. Silkwood informed Trooper Moore that his license was in the van's glove box and asked if he could retrieve it. Trooper Moore and Mr. Silkwood then walked together along the passenger side of the van where Mr. Silkwood opened the front door and reached into the glove compartment for his billfold. While Mr. Silkwood was removing the license from his billfold, Trooper Moore noticed part of the butt of a revolver protruding from a bank bag. Trooper Moore then ordered Mr. Silkwood to step to the rear of the van, grabbed the gun, checked it, saw that it was loaded, put the revolver in the waistband of his trousers, and placed Mr. Silkwood under arrest.

Prior to trial, Mr. Silkwood's attorney moved to withdraw because he had previously represented one of the Government's witnesses. The trial court granted this motion just five days before trial, and appointed new counsel to represent him at trial. Immediately after trial, Mr. Silkwood moved to appear *pro se* for the remainder of his case. The trial court granted this motion by minute order without inquiry or advisement. The Government, meanwhile, moved for sentence enhancement pursuant to 18 U.S.C. § 924(e)(1), alleging that at

least three of Mr. Silkwood's eight prior convictions were for violent felonies.

At the hearing on the Government's motion for enhancement, the court asked Mr. Silkwood whether, considering the gravity of the motion for enhancement, he would like an attorney appointed to represent him. Mr. Silkwood refused the offer because he believed that his trial counsel had been incompetent. The court then informed Mr. Silkwood that his sentence could be enhanced up to fifteen years with a substantial fine and continued the hearing.

At the subsequent hearing, the court inquired again whether Mr. Silkwood wanted an attorney appointed to represent him and informed him generally of the dangers of self-representation. Mr. Silkwood rejected the offer because he believed that trial counsel had spent insufficient time preparing his case and that he could represent himself more effectively than appointed counsel. After hearing argument on the Government's motion for enhancement, the court sentenced Mr. Silkwood to twenty-five years imprisonment without parole.

## II.  MR. SILKWOOD'S PRE– AND POST–TRIAL MOTIONS

■ The Fourth Amendment prohibits a warrantless search or seizure unless it falls within one of the amendment's "few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576 (1967). Under the plain view doctrine, one of the recognized exceptions to the Fourth Amendment, a police officer who is lawfully present in a particular place may seize property within his plain view if " 'there is probable cause to associate the property with criminal activity.' " *Texas v. Brown*, 460 U.S. 730, 738–39, 103 S.Ct. 1535, 1541, 75 L.Ed.2d 502 (1983) (quoting *Payton v. New York*, 445 U.S. 573, 587, 100 S.Ct. 1371, 1380, 63 L.Ed.2d 639 (1980)). We conduct a *de novo* review to determine whether the trial court properly held that the plain view doctrine applies in this case.

*United States v. Stewart,* 867 F.2d 581, 584 (10th Cir.1989).

■ The facts of this case clearly support the trial court's holding. Since Trooper Moore stopped Mr. Silkwood for speeding, he was lawfully present at the front passenger side of the van when he saw the butt of the revolver. Although the butt of the revolver was in plain view, the rest of the gun was concealed inside a bank bag. Oklahoma law prohibits any unauthorized person from carrying a concealed weapon.[1] Okla.Stat.Ann. tit. 21, § 1289.8 (West 1983). Since the revolver in Mr. Silkwood's van was partially concealed, Trooper Moore had probable cause to associate it with criminal activity. Under these circumstances, the seizure of the revolver clearly falls within the plain view exception to the Fourth Amendment's prohibition against warrantless searches and seizures. The trial court, therefore, properly denied Mr. Silkwood's motion to suppress.

■ Mr. Silkwood also contends that the trial court erred in refusing, after an *in camera* inspection, to allow him access to Trooper Moore's personnel file. He asserts that since Trooper Moore admitted at the hearing on the motion to suppress that he had had citizens' complaints filed against him, the personnel file may have contained evidence which would undermine Trooper Moore's credibility as a witness. He would then be entitled to view this evidence under the doctrines of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). At Mr. Silkwood's suggestion, we have conducted our own *in camera* inspection of Trooper Moore's personnel file and find that the trial court ruled properly in denying Mr. Silkwood access to it since it contains no *Brady* evidence. We have also reviewed Mr. Silkwood's claims that the trial court erred in denying his motions for a mistrial and find them to be without merit.

## III. VIOLATION OF MR. SILKWOOD'S SIXTH AMENDMENT RIGHT TO COUNSEL

■■ Since the Supreme Court held in *Faretta v. California,* 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975), that a criminal defendant has the right to appear *pro se* if he voluntarily, knowingly, and intelligently waives his Sixth Amendment right to counsel, this court has addressed on several occasions the inquiry which a trial court must make to ensure that the waiver meets these standards. *See, e.g., United States v. Gipson,* 693 F.2d 109 (10th Cir.1982), *cert. denied,* 459 U.S. 1216, 103 S.Ct. 1218, 75 L.Ed.2d 455 (1983); *United States v. Padilla,* 819 F.2d 952 (10th Cir.1987); *Sanchez v. Mondragon,* 858 F.2d 1462 (10th Cir.1988). For the waiver to be voluntary, the trial court must inquire into the reasons for the defendant's dissatisfaction with his counsel to ensure that the defendant is not exercising a choice between incompetent or unprepared counsel and appearing *pro se. Sanchez,* 858 F.2d at 1465. For a waiver to be knowing and intelligent, the trial court must conduct a " 'penetrating and comprehensive examination' " into the defendant's " 'apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter.' " *Padilla,* 819 F.2d at 956–57 (quoting *Von Moltke v. Gillies,* 332 U.S. 708, 723–24, 68 S.Ct. 316, 323, 92 L.Ed. 309 (1948)). This inquiry must appear in the record. *Gipson,* 693 F.2d at 112. Our *de novo* review of the trial court's inquiry in this case leads us to the conclusion that Mr. Silkwood did not voluntarily or knowingly waive his Sixth Amendment right to counsel.

■ At the first hearing on the Government's motion for sentence enhancement, Mr. Silkwood rejected the court's offer to appoint counsel because he believed that

---

1. The statute excepts from the prohibition on carrying a concealed weapon law enforcement officers, registered security officers and employ-ees of armored car firms licensed by the Corporation Commission. Mr. Silkwood does not fall within any of these categories.

his trial counsel had been incompetent.[2] At the subsequent sentence enhancement proceeding, Mr. Silkwood informed the court that he wanted to proceed *pro se* because he believed that trial counsel had spent insufficient time preparing his case and that he could represent himself more effectively than appointed counsel.[3] Rather than inquiring thoroughly into Mr. Silkwood's allegations of incompetence, the trial court merely attempted to persuade him that trial counsel had done an excellent job in light of the circumstances. The trial court, therefore, failed to ensure that Mr. Silkwood was not forced to make the Hobson's choice against which *Sanchez* warns, a choice between incompetent or unprepared counsel and appearing *pro se*. As a result, his choice did not reach the level of voluntariness which *Faretta* and our cases require.

The trial court's inquiry was also inadequate to ensure that Mr. Silkwood's waiver was knowing and intelligent. Besides its general statements about the seriousness of sentence enhancement, the trial court informed Mr. Silkwood that his sentence "could be enhanced up to fifteen years and a substantial fine." This statement is not only inadequate but also incorrect.[4] In fact, the trial court sentenced Mr. Silkwood to twenty-five years without parole. Since the trial court's inquiry could not have ensured that Mr. Silkwood voluntarily, knowingly, and intelligently waived his right to counsel, we remand this case for resentencing and direct the sentencing court to appoint counsel to assist Mr. Silkwood unless, after proper inquiry, Mr. Silkwood waives that right.

## IV. THE DEFINITION OF BURGLARY IN 18 U.S.C. § 924(e).

■ Section 924(e) subjects to sentence enhancement any person who is convicted for possession of a firearm who has previously been convicted of three violent felonies or serious drug offenses. Section 924(e)(2)(B)(ii) includes within the definition of "violent felony" any felony which "is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of injury to another." The circuits have split over Congress's intended definition of "burglary" in 18 U.S.C. § 924(e)(2)(B)(ii).

The Fourth and Ninth Circuits have adopted the common law definition of burglary. *United States v. Headspeth*, 852

---

**2.** The following colloquy took place:

THE COURT: Let me ask you something, you fired this lawyer and I let him get out. Don't you think, particularly in light of this motion for the enhancement, don't you think you need a lawyer to represent you?

MR. SILKWOOD: Not that one if that's the same, you know.

THE COURT: Well, you and I disagree. You didn't think he did a good job. I thought he did a marvelous job under the circumstances, considering what the evidence was. You know, you may be disappointed with the jury verdict, but—

MR. SILKWOOD: No, sir, because if I had been the jury at the time I would have found me guilty, too, due to the fact there wasn't no evidence presented in my behalf at my request.

**3.** In response to the court's inquiry whether he desired appointed counsel to represent him, Mr. Silkwood stated:

Yes, sir. I was intending to address the Court to make acknowledgment of the fact, that you asked me if I wanted representation, and no disregard to the Court or the judicial system or the public defender's office, but I feel that the way I was represented at the trial that if that was the best that could be appointed, then, it would be just to my best knowledge that I feel that I could represent myself better than I was represented at the trial and these proceeding [sic].

Mr. Silkwood later stated:

Just for the record, Your Honor, you make the statment [sic] I might be upset with the verdict or outcome. To me that has no bearing. Where I was reflecting my attorney that represented me, was Mr. Wilcoxen, I'm not even reflecting that he was—I'm saying he may have been ineffective due to the fact of the time and circumstances he had to prepare the case. You know, he was appointed what, six days before my trial. He had seen me approximately, maybe, one hour. I had his own notes to where he filled out his CJS–20 form and that's all he charged. He counseled me for one hour and it wasn't even a full hour. He made no opening statements. He failed to question any of my witnesses.

**4.** Section 924(e)(1) establishes a penalty of 15 years as a minimum, not a maximum, and precludes the sentencing judge from granting a suspended or probationary sentence.

F.2d 753, 758 (4th Cir.1988); *United States v. Chatman,* 869 F.2d 525, 527 (9th Cir. 1989). The Fifth and Eighth Circuits, relying on the plain language of the statute, have held that where a state denominates a crime as burglary, a conviction for that crime qualifies as a predicate offense for purposes of sentence enhancement regardless of whether the underlying conduct involved actual or potential violence. *United States v. Leonard,* 868 F.2d 1393, 1395 (5th Cir.1989); *United States v. Portwood,* 857 F.2d 1221, 1223–24 (8th Cir.1988), *cert. denied,* —— U.S. ——, 109 S.Ct. 2073, 104 L.Ed.2d 638 (1989) ("The statute says 'burglary,' and we take that to mean 'burglary,' however a state may choose to define it."). The Third, Sixth, Seventh, and Eleventh Circuits have adopted the definition of burglary which appeared in the Armed Career Criminal Act of 1984 (ACCA), Chap. XVIII of the Comprehensive Crime Control Act of 1984, Pub.L. No. 98–473, § 1803, 98 Stat. 1837, 2185. *United States v. Palmer,* 871 F.2d 1202, 1208 (3d Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 233, 107 L.Ed.2d 185 (1989); *United States v. Taylor,* 882 F.2d 1018, 1027 (6th Cir.1989); *United States v. Dombrowski,* 877 F.2d 520, 530 (7th Cir.1989);[5] *United States v. Hill,* 863 F.2d 1575, 1581–82 (11th Cir.1989). According to that definition, "burglary" is "any felony punishable by a term of imprisonment exceeding one year and consisting of entering or remaining surreptitiously within a building that is the property of another with intent to engage in conduct constituting a Federal or State offense."[6] Finally, the First Circuit has declined an

attempt to discern Congress's intended definition of burglary in § 924(e). *United States v. Patterson,* 882 F.2d 595, 604 (1st Cir.1989) ("We frankly cannot divine how Congress intended to define burglary.").

After reviewing the opinions of the circuits which have addressed this question, we agree with the reasoning of those which define burglary as it appears in the ACCA. The trial court, therefore, should apply that definition when it determines which of Mr. Silkwood's prior burglary convictions should count towards enhancement.

### V. CONCLUSION

For the foregoing reasons, we AFFIRM Mr. Silkwood's conviction but REMAND this case for resentencing.

**5.** In *United States v. Leonard,* 868 F.2d 1393, 1396 (5th Cir.1989), the court cited *United States v. Dickerson,* 857 F.2d 414 (7th Cir.1988) (en banc), *cert. denied,* —— U.S. ——, 109 S.Ct. 1753, 104 L.Ed.2d 189 (1989), to supports its "plain language" interpretation of burglary in § 924(e). The *Dickerson* court held that Dickerson's prior convictions for residential burglary subjected him to enhancement because "all burglaries satisfy the prerequisites of § 924." *Id.* at 419. The *Dickerson* court, therefore, seemingly adopted a "plain language" view of the definition of burglary. In *Dombrowski,* however, the Seventh Circuit addressed the question whether prior convictions for commercial burglary subject the defendant to sentence enhancement. Rather than concluding that commercial burglary satisfies the enhancement statute simply because the state denominated it as burglary, the court

adopted the Eleventh Circuit's approach and held that prior convictions for commercial burglary subject the defendant to enhancement because they fall within the ACCA's definition of that term. *Dombrowski,* therefore, apparently overruled *Dickerson.*

**6.** The Firearms Owners' Protection Act, Pub.L. No. 99–308, § 104(a), 100 Stat. 449, 458–59 (1986), amended the definition of burglary in the ACCA to include "any crime," rather than "any felony." Congress subsequently enacted the Career Criminal Amendments Act of 1986, Subtitle I of the Anti–Drug Abuse Act of 1986, Pub.L. No. 99–570, §§ 1401–1402, 100 Stat. 3207, 3207–39 to 3207–40, to create the current version of § 924(e).