**UNITED STATES of America,
Petitioner,**

**v.**

**Edward Howard PALMER
Actual Respondent,**

**The Honorable Paul A. Simmons,
Nominal Respondent.**

**No. 88–3505.**

United States Court of Appeals,
Third Circuit.

Argued Dec. 6, 1988.

Decided March 31, 1989.

Rehearing and Rehearing In Banc
Denied April 28, 1989.

Errol S. Miller, Martin M. Scoratow (argued), Scoratow and Dudik, Pittsburgh, Pa., for Edward Howard Palmer.

J. Alan Johnson, U.S. Atty., Constance M. Bowden (argued), Paul J. Brysh, Asst. U.S. Attys., Pittsburgh, Pa., for the U.S.

## OPINION OF THE COURT

Before SLOVITER and BECKER, Circuit Judges, and BARRY, District Judge [*].

BECKER, Circuit Judge.

Actual respondent Edward Howard Palmer was convicted in the district court for the Western District of Pennsylvania of possessing firearms in violation of 18 U.S.C. § 922(g) (Supp. IV 1986).[1] This petition for mandamus brought by the United States pursuant to 28 U.S.C. § 1651 (1982) presents the question whether Palmer's two prior state convictions for breaking and entering constitute convictions for "violent felonies" within the meaning of the Armed Career Criminal Act ("ACCA") so as to trigger ACCA's enhanced sentencing provision, 18 U.S.C. § 924(e) (Supp. IV 1986).[2] This provision provides for a mandatory minimum of fifteen years' imprisonment without parole where the defendant has three predicate felony convictions. If the state convictions constitute "violent fel-

onies," we must then determine whether the district court's error in finding that they do not is of such a nature that it is appropriate for us to issue a writ of mandamus directing the district court: (1) to vacate the lesser sentence it imposed; and (2) to resentence Palmer in accordance with section 924(e). For the reasons that follow, we conclude that the state convictions at issue do qualify as "violent felonies." We also conclude that mandamus is the appropriate remedy. Accordingly, the writ will issue.

## I.

In May of 1987, a grand jury, sitting in the Western District of Pennsylvania, returned a four-count indictment charging that on or about January 9, 1987, Palmer knowingly possessed four firearms in violation of 18 U.S.C. § 922(g).[3] Following a jury trial, Palmer was convicted of all four counts.

On July 8, 1988, a sentencing hearing was held. At that time, the government sought the enhanced penalty provided for in 18 U.S.C. § 924(e). This section of ACCA provides:

(e)(1) *In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony* or a serious drug offense, or both, *such person shall be* fined not more than $25,000 and *im-*

---

[*] The Honorable Maryanne Trump Barry, United States District Judge for the District of New Jersey, sitting by designation.

1. This provision was originally codified at 18 U.S.C.App. § 1202(a) (1982). Congress moved the part of the text of 18 U.S.C.App. § 1202 dealing with firearms offenses to § 922(g), amended § 922(g), and repealed § 1202 in the Firearms Owners' Protection Act of 1986. Pub.L. No. 99–308, 100 Stat. 451 (1986). *See United States v. Kolter,* 849 F.2d 541, 542 (11th Cir.1988).

2. This provision was originally codified at 18 U.S.C.App. § 1202(a) (1982). The provisions of § 1202(a) relating to penalty enhancement were moved to § 924(e) and § 1202 was repealed pursuant to enactment of The Firearms Owners'

Protection Act, *supra,* note 1. The Career Criminals Amendment Act of 1986, Pub.L. No. 99–570, § 1402, 100 Stat. 3207–39 (1986), amended § 924(e) by replacing "for robbery or burglary, or both" with "for a violent felony or a serious drug offense, or both" and by defining "serious drug offense" and "violent felony."

3. 18 U.S.C. § 922(g) provides:
 (g) It shall be unlawful for any person—
 (1) who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year;
 \* \* \* \* \* \*
 to ... possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

*prisoned not less than fifteen years,* and, notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and, such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

(2) As used in this subsection—

\* \* \* \* \* \*

(B) *the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—*

(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or

(ii) *is burglary,* arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

18 U.S.C. § 924(e) (emphasis added).

In support of its request for an enhanced sentence, the government informed the district court that it intended to prove that Palmer had three prior convictions for "violent felonies" as defined in the statute. The government stated that its evidence would show that on March 16, 1966, Palmer had pled guilty in an Ohio state court to unlawfully and forcibly breaking and entering an uninhabited dwelling at night with intent to commit larceny therein. The government stated that it would also show that on March 5, 1981, Palmer was convicted in a West Virginia state court of feloniously breaking and entering a state-owned storehouse. As the third conviction, the government offered to prove that on November 2, 1981, Palmer had pled guilty to attempted bank robbery in violation of 18 U.S.C. §§ 2113(a), (b) (1982) in the United States District Court for the Western District of Pennsylvania.

Over the government's objection, the district court held that since Palmer's Ohio conviction was not for "burglary" under Ohio law, it could not be used as the basis for enhancing his current sentence pursuant to 18 U.S.C. § 924(e). The district court also held that to apply an expanded definition of the term "burglary" would violate the Ex Post Facto Clause of the United States Constitution. Finally, although it did not directly rule on the issue, the district court intimated that Palmer's West Virginia conviction also could not be considered a "burglary" for purposes of 18 U.S.C. § 924(e).

As a result of its ruling, the district court refused to apply the enhanced sentencing provision, which would have required that a mandatory minimum sentence of fifteen years be imposed. Instead, the court sentenced Palmer to four five-year terms of imprisonment, two of which were to run concurrently, resulting in a total sentence of ten years' imprisonment. This sentence is subject to parole, whereas an enhanced sentence imposed pursuant to 18 U.S.C. § 924(e) would have been without the possibility of parole.

## II.

ACCA defines "violent felony" as, *inter alia,* "any crime punishable by imprisonment for a term exceeding one year that ... is burglary, ... or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B). Palmer clearly has been convicted of one violent felony for purposes of the Act, his federal attempted bank robbery conviction. As we have noted, the district court did not rule on his West Virginia conviction, and found that his Ohio conviction was not for a "violent felony" under the Act because it was not a "burglary" under Ohio law. We must therefore determine whether the West Virginia and Ohio convictions were in fact for "burglaries" under the Act. If we find that they were not, we must then determine whether they were for crimes that involve conduct that "presents a serious potential risk of physical injury to another."

### A.

■ We begin our analysis of the first issue, whether Palmer's earlier convictions

were for "burglaries" under the Act, by holding that the district court erred by looking to state law in determining whether the convictions were for "burglaries." This is because, "in the absence of a plain indication of an intent to incorporate diverse state laws into a federal criminal statute, the meaning of the federal statute should not be dependent on state law." *United States v. Turley*, 352 U.S. 407, 411, 77 S.Ct. 397, 399, 1 L.Ed.2d 430 (1957). Rather, it is a well-established principle that where a federal criminal statute uses a common law term of established meaning without otherwise defining it, it is to be given its common law meaning, not its state law meaning. See *id.; see also United States v. Everett*, 700 F.2d 900, 904 (3d Cir.1983). "Of course, Congress is not compelled to adopt common law concepts when it creates a statutory crime," and even if an undefined term has "a generally accepted common law meaning," courts should "not impose that meaning if there are 'grounds for inferring an affirmative instruction from Congress' to define it otherwise." *Everett*, 700 F.2d at 904 (citation omitted). In short, where Congress has spoken as to the definition of a term, whether through a statute's text or legislative history, we are required to employ that definition. Where it has not, and the term in question is a common law term of established meaning, we are required to give it its common law definition.[4]

The common law offense of "burglary" was defined as " 'the breaking and entering of the *dwelling house* of another in the nighttime, with the intent to commit a felony therein....' " *United States v. Brandenburg*, 144 F.2d 656, 660 n. 7 (3d Cir. 1944) (citation omitted) (emphasis added). Palmer's Ohio offense (and his West Virginia offense) do not fall within this category, since they were "burglaries" of commercial buildings. Therefore, if the common law definition of "burglary" is to be used for purposes of imposing an enhanced sentence under ACCA, he did not commit

three prior crimes of the severity that would mandate the fifteen-year sentence under the burglary provision of 18 U.S.C. § 924(e)(2)(B)(ii). The issue then is whether Congress intended that a particular definition of "burglary" other than the common law definition is to be used in applying the statute before us. If it has, then we must apply that definition. If it has not, then we must apply the common law definition, and Palmer's two convictions may not be considered "burglaries" for purposes of the Act.

The current statute does not explicitly define "burglary." However, prior to its 1986 amendment by P.L. 99–570, § 1402, 100 Stat. 3207–39–40 (1986), ACCA defined "burglary" in a generic form as "any crime punishable by imprisonment exceeding one year and consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." P.L. 99–308, § 104(a)(4), 100 Stat. 449, 458–59 (1986). The government argues that the legislative history of the 1986 amendment, which is now the law, demonstrates a congressional intent *not* to reduce the scope of this earlier definition. Despite the maxim that criminal statutes are to be construed narrowly, it is necessary to resort to the legislative history of a criminal statute in order to construe it. See *United States v. Turley*, 352 U.S. at 413, 77 S.Ct. at 400; *United States v. Everett*, 700 F.2d at 904–06. Therefore, we consider whether the statute's legislative history demonstrates that Congress intended the term "burglary" to continue to be defined in its generic form as it was prior to the statute's amendment.

### B.

We first note that the reason for the enactment of the original statute was to incarcerate repeat offenders, and particularly those found guilty of robbery and burglary in the generic form it defined.

---

**4.** The decisions in *United States v. Portwood*, 857 F.2d 1221, 1223–24 (8th Cir.1988), and *United States v. Dickerson*, 857 F.2d 414, 418–19 (7th Cir.1988), both construing ACCA, applied (with-out discussion) the state law meaning rather than the common law meaning. We therefore do not follow them.

We previously surveyed this field in *United States v. Hawkins*, 811 F.2d 210 (3d Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 110, 98 L.Ed.2d 69 (1987), and explained that:

> Congress enacted the Armed Career Criminal provision for the purpose of incapacitating particular repeat offenders, who it found were responsible for a large proportion of crimes involving theft and violence. . . .

Senator Arlen Specter, who introduced the enhanced penalty provision in the Senate, explained it as follows:

> Robberies and burglaries are the most damaging crimes to society. Robberies and burglaries occur with far greater frequency than other violent felonies, affect many more people, and cause the greatest losses. A person is 40 times more likely to be a victim of robbery than of rape.
>
> Robberies involve physical violence or the threat thereof, being deliberately directed against innocent individuals. Burglaries involve invasion of their homes or workplaces, violation of their privacy, and loss of their most personal and valued possessions. Often—30 percent of robberies—these offenses result in physical injuries; usually—90 percent for robberies—they result in significant financial loss; always they inflict psychological injury. Such crimes force people to live not in freedom, but in fear.
>
> Most robberies and burglaries are committed by career criminals. A high percentage of robberies and burglaries are committed by a limited number of repeat offenders. Many commit scores of offenses. Some studies estimated that the majority of these offenses are committed by career criminals. Career criminals often have no lawful employment; their full-time oc-

cupation is crime for profit and many commit crimes on a daily basis.

> In New York City, for example, studies showed that only 1,100 recidivists were probably responsible for most of the 100,000 robberies each year. Another study showed that only 49 imprisoned robbers admitted committing 10,000 felonies over 20 years. A third study showed that only 6 percent of those born in 1945 who committed crimes were responsible for 80 percent of the offenses of their age group. Various studies also indicate that for every time a career criminal is arrested for robbery or burglary, he has probably committed 10 to 20 such crimes. Career criminals commit robberies and burglaries interchangeably.

*Id.* at 216–17 (citations omitted).[5]

Subsequently, however, Congress amended the statute and the amendment in part deleted the generic definition of "burglary" from the original statute. This amendment arose out of three bills, two House bills and one Senate bill. Two of the bills would plainly have expanded the reach of the statute. All three bills would have deleted "robbery or burglary" and replaced it with "a crime of violence or a serious drug offense" or substantially similar language.

The Senate bill, S. 2312, 99th Cong., 2d Sess. (1986), would have defined a "crime of violence" as "(A) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another or (B) any other offense that is a felony and that by its nature involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." *Id.* at 2. One House bill, H.R. 4639, 99th Cong., 2d Sess. (1986), was essentially similar. The other House bill, H.R. 4768, 99th Cong., 2d Sess. (1986), would have defined

---

**5.** It is interesting to note that Palmer seems to fit this profile. The district court noted at sentencing that:

> this defendant has been involved with law breaking or accusations of law breaking continuously over a period of 20 years. There are over 20 different charges against this man

filed over the 20 years. He has been continuously involved with law breaking for his entire adult life and [has presently] pending in State Court ... one or two cases. . . .

Transcript of Dist.Ct.Hearing at 43 (July 8, 1988).

a crime of violence as "any State or Federal felony that has as an element the use, attempted use or threatened use of physical force against the person of another." *Id.* at 2. Thus, two of the bills, S. 2312 and H.R. 4639, would have explicitly expanded the statute's coverage of crimes against property. H.R. 4768 apparently would have eliminated crimes solely against property from the reach of the Act.

Hearings were conducted on these bills at which, *inter alia,* many witnesses expressed concern that were H.R. 4768 enacted it would inadvertently narrow the scope of the Act to exclude burglaries, which they viewed as inherently dangerous because of the high incidence of crimes of violence committed during burglaries upon people in the premises. For example, Deputy Assistant Attorney General James Knapp testified as follows:

> Thus the bill inadvertently narrows the scope of the present Armed Career Criminal Act.... Now the question has been raised, well, what crimes against property should be included? We think burglary, of course;.... It is these crimes against property—which are inherently dangerous—that we think should be considered as predicate offenses for the Armed Career Criminal Act.
>
> \* \* \* \* \* \*
>
> [Burglary] is probably the No. 1 professional crime.
>
> No. 2, even though injury is not an element of the offense, it is a potentially very dangerous offense, because when you take your very typical residential burglary or even your professional commercial burglary, there is a very serious danger to people who might be inadvertently found on the premises. Many crimes of violence do occur in the course of committing the burglary. It is something which is clearly a foreseeable risk, and for that reason it is always included in any felony murder statute.

*Armed Career Criminal Legislation: Hearings on H.R. 4639 and H.R. 4768 Before the Subcomm. on Crime of the House Comm. on the Judiciary,* 99th Cong., 2d Sess. 14, 15, & 26 (1986). *See also* testimony of Ronald B. Castille, District Attorney of Philadelphia, to similar effect. *Id.* at 48–53.

Following these hearings, the House Subcommittee on Crime reported out a clean bill, H.R. 4855, 99th Cong., 2d Sess. (1986). H.R. 4855 proposed to amend the statute to delete the specific provisions relating to "robbery and burglary" and replace them with the terms "a violent felony or a serious drug offense." It defined "violent felony" as "any crime punishable by imprisonment for a term exceeding one year that[:] (i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) involves conduct that presents a serious potential risk of physical injury to another." *Id.* at 7. Prior to passage, H.R. 4855 was included in H.R. 5484 and became part of The Anti–Drug Abuse Act of 1986. Before final passage, Congress amended subsection (ii) to define a violent felony as any offense which "(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii).

### C.

Palmer argues that the amended statute's deletion of the definition of "burglary," particularly in the form contained in H.R. 4768, which would have removed all burglaries from the list of predicate offenses, suggests that Congress intended to revert to the common law definition of "burglary," or at least did not have a particular definition of "burglary" in mind. *See United States v. Headspeth,* 852 F.2d 753, 758 (4th Cir.1988) (adopting this view). Were there an ambiguity as to whether this was the case, the principle of lenity would compel us to adopt the narrower construction of the statute and restrict the meaning of burglary to the common law definition. *See United States v. Bass,* 404 U.S. 336, 347, 92 S.Ct. 515, 522, 30 L.Ed.2d 488 (1971) (" 'ambiguity concerning the ambit of criminal statutes should be resolved in favor of lenity' ") (citation omitted). This principle of "lenity" applies to sentencing provisions

as well as the underlying criminal statute. *Bifulco v. United States,* 447 U.S. 381, 387, 100 S.Ct. 2247, 2252, 65 L.Ed.2d 205 (1980). However, H.R. 4768 did not become law and, in fact, never even made it to the House floor. Moreover, we believe that the legislative history of H.R. 4885, the bill that eventually amended the Act, when considered in conjunction with the legislative history of the original ACCA and the legislative history of the other House and Senate Bills that would have amended the Act, dictates a different conclusion.

The committee report accompanying H.R. 4855 indicates that its sole purpose was to expand the reach of the statute to increase the purview of federal involvement. It states the purpose of the legislation as follows:

Purpose of the Legislation

This bill is designed to increase the participation of the Federal law enforcement system in efforts to curb armed, habitual drug traffickers and violent criminals.

H.R.Rep. No. 849, 99th Cong., 2d Sess., at 1 (1986) U.S.Code Cong. & Admin.News p. 5395. The report also discusses the hearings held on the bill:

The Subcommittee on Crime held a hearing on May 21, 1986 to consider whether *it should expand* the predicate offenses (robbery and burglary) in existing law in order to add to its effectiveness. At this hearing a consensus developed in support of *an expansion* of the predicate offenses to include serious drug trafficking offenses under both State and Federal law and violent felonies, generally. *This concept was encompassed in H.R. 4885 by deleting the specific predicate offenses for robbery and burglary* and adding as predicate offenses State and Federal laws for which a maximum term of imprisonment of 10 years or more is prescribed for manufacturing, distributing or possessing with intent to manufacture or distribute controlled substances and violent felonies under Federal or State law if the offense has [as] an element the use, attempted use or threat-

ened use of physical force against a person. This latter provision would include such felonies involving physical force against a person such as murder, rape, assault, robbery, etc.

The other major question involved in these hearings was as to what violent felonies involving physical force against *property* should be included in the definition of "violent" felony. *The Subcommittee agreed to add the crimes punishable for a term exceeding one year that involve conduct that presents a serious potential risk of physical injury to others. This will add State and Federal crimes against property such as burglary, arson, extortion, use of explosives and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person.* It is the Committee's belief that this will improve the armed career criminal concept while at the same time preserve a strong concept of Federalism as well as an appreciation for the relative law enforcement resources available at the State and Federal levels.

*Id.* at 3 (emphasis added).

 This report explicitly recognizes burglary as presenting a serious risk of injury to the person. Additionally, as we have noted, the hearings on the prior bills reflect a concern by many witnesses that were H.R. 4768 enacted, it would inadvertently exclude "burglaries" from coverage. Finally, as we have also noted, one of the purposes of the original statute was to incarcerate repeat offenders who were found guilty of "burglary" in its generic form. In view of this legislative history, we agree with the government that the term "burglary" must be given the generic definition that explicitly existed prior to its amendment. The language of the statute, read in conjunction with the statute's legislative history, does not admit of the ambiguity necessary to apply the rule of lenity. Since both Palmer's Ohio offense and his West Virginia offense constitute "burglaries" under this generic definition, they are "violent felonies" for purposes of ACCA. Accordingly, the district court clearly erred

by not sentencing him in accordance with its provisions.

■ Alternatively, we conclude the West Virginia and Ohio convictions to be for crimes that "otherwise involve[ ] conduct that presents a serious potential risk of physical injury to another." As we have noted, the committee report accompanying H.R. 4855 states that it intended to include "State and Federal crimes against property such as burglary ... and similar crimes as predicate offenses where the conduct involved presents a serious risk of injury to a person." And, at the hearings conducted on the precursor bills to H.R. 4855, many witnesses expressed a desire to see ACCA continue to include burglaries, which they viewed as inherently dangerous because of the high incidence of crimes of violence committed during burglaries upon people in the premises. Given the fact that people may often be in homes or commercial establishments when they are burglarized, we also hold that any burglary, as we have generically defined it, "presents a serious potential risk of physical injury to another."

### III.

■ We must therefore turn to the question whether the government is entitled to a writ of mandamus. 28 U.S.C. § 1651 states that "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." The remedy of mandamus is a drastic one, and may only be invoked in extraordinary situations. *Will v. United States*, 389 U.S. 90, 95, 88 S.Ct. 269, 273, 19 L.Ed. 2d 305 (1967). Therefore, it "has traditionally been used in the federal courts only 'to confine an inferior court to a lawful exercise of its prescribed jurisdiction or to compel it to exercise its authority when it is its duty to do so.'" *Id.* (citation omitted). "[O]nly exceptional circumstances amounting to a judicial 'usurpation of power' will justify the invocation of this extraordinary remedy." *Id.* (citation omitted). Mandamus cannot be used to correct a mere error

in the exercise of conceded judicial power. *DeBeers Consolidated Mines, Ltd. v. United States*, 325 U.S. 212, 217, 65 S.Ct. 1130, 1132–33, 89 L.Ed. 1566 (1945).

Nonetheless, mandamus is available in cases where the district judge has no statutory authority to impose a particular sentence. *Gov't of Virgin Islands v. Douglas*, 812 F.2d 822, 832 (3d Cir.1987) ("[c]hallenges of a district court judge's power to impose a particular sentence fall within the narrow range of cases in which mandamus may be appropriate"); *United States v. Ferri*, 686 F.2d 147, 152 (3d Cir.1982) (granting a writ of mandamus vacating district court's order reducing sentence to time served because district court was without jurisdiction to do so), *cert. denied*, 459 U.S. 1211, 103 S.Ct. 1205, 75 L.Ed.2d 446 (1983); *United States v. Jackson*, 550 F.2d 830, 831 (2d Cir.1977) (granting writ of mandamus where district court exceeded jurisdiction under youth offender statute by imposing sentence of less than six years).

In order to ensure that the writ of mandamus is issued only in extraordinary circumstances, the party seeking the writ must show that he or she has "no other adequate means to attain the relief he desires ... and that [his or her] 'right to issuance of the writ is "clear and indisputable."'" *Allied Chemical Corp. v. Daiflon, Inc.*, 449 U.S. 33, 35, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980) (citations omitted). "The 'clear and indisputable' test is [to be] applied *after* the statute has been construed by the court entertaining the petition." *Douglas*, 812 F.2d at 832 n. 10 (emphasis added). " 'The requirement that a duty be "clearly defined" to warrant issuance of a writ does not rule out mandamus actions in situations where the interpretation of the controlling statute is in doubt.... As long as the statute, once interpreted creates a peremptory obligation for the officer to act, a mandamus action will lie.' " *Id.* (citation omitted) (ellipsis in original).

The teaching of these cases applies with special force here. The government has no other means of obtaining review of this

issue since it has no authority to take an appeal from a sentencing order. *See id.* at 829–32. Additionally, as we have discussed, we find that the district court clearly erred in the way in which it construed ACCA's definition of "burglary." Therefore, we find the government's right to the issuance of the writ to be clear and indisputable. Accordingly, the writ will be issued. While the government may not make an end run around its statutorily limited right to appeal, the remedy of mandamus is available in situations where, as here, there is a challenge to the district court's power to impose the sentence it did, *Douglas,* 812 F.2d at 832; *United States v. Hundley,* 858 F.2d 58, 66 (2d Cir.1988), and the rigorous test for issuance of the writ is met.

## IV.

For the foregoing reasons, we will issue a writ of mandamus directing the district court to vacate the sentence of actual respondent Edward Howard Palmer, and to resentence him in accordance with the provisions of the Armed Career Criminal Act.