UNITED STATES of America,
Appellant,

v.

John W. PATTERSON, Jr.,
Defendant, Appellee.

No. 88–1497.

United States Court of Appeals,
First Circuit.

Heard Dec. 8, 1988.

Decided Aug. 23, 1989.

As Amended Aug. 25, 1989.

**596**

Cerise Lim–Epstein, Asst. U.S. Atty., with whom Wayne A. Budd, U.S. Atty., Boston, Mass., was on brief for appellant.

James S. Dilday, with whom Grayer, Brown & Dilday and Elizabeth D. Shackford, Boston, Mass., were on brief for defendant, appellee.

Before CAMPBELL, Chief Judge, BOWNES, and TORRUELLA, Circuit Judges.

## ON PETITION FOR REHEARING AND PETITION FOR WRIT OF MANDAMUS

BOWNES, Circuit Judge.

The government appealed from the district court's determination that the prior convictions of defendant, John W. Patterson, Jr., for breaking and entering under Mass.Gen.L. ch. 266, §§ 16, 18 did not qualify as predicate offenses for sentence enhancement pursuant to the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). After we issued an opinion reversing the district court, we withdrew the opinion and ordered a rehearing on the issue of whether the government had a right to appeal the sentence in this case.

We now hold that the government did not have a right to appeal the sentence of the district court, but under our mandamus authority reverse on the merits and order resentencing.

## I. BACKGROUND

Patterson was indicted for violation of 18 U.S.C. § 922(g)(1)[1]—a felon in possession of a firearm which had been shipped in interstate commerce. When he was arraigned, the government notified him that if he were convicted, it would seek an enhanced sentence under 18 U.S.C. § 924(e)(1) because he had three previous convictions, each a "violent felony."[2] After one day of trial, Patterson pleaded guilty to the violation of 18 U.S.C. § 922(g)(1).

The district court sentenced Patterson to five years, to be served consecutively to the state sentence he is presently serving, and a special assessment of $50.00. The government appealed.[3] Neither the government nor Patterson addressed the issue of appellate jurisdiction. On April 26, 1989, we issued an opinion which held "that both Massachusetts breaking and entering statutes are predicate crimes" and remand-

---

1. He was also indicted on a second count which was subsequently dropped and is not relevant to this appeal.

2. 18 U.S.C. § 924(e)(1) provides:
 In the case of a person who violates section 922(g) of this title and has three previous convictions by any court referred to in section 922(g)(1) of this title for a violent felony or a serious drug offense, or both, such person shall be fined not more than $25,000 and imprisoned not less than fifteen years, and notwithstanding any other provision of law, the court shall not suspend the sentence of, or grant a probationary sentence to, such person with respect to the conviction under section 922(g), and such person shall not be eligible for parole with respect to the sentence imposed under this subsection.

3. The government did not contest the district court's ruling on the larceny conviction; it only challenged whether the two breaking and entering convictions were predicate offenses under § 924(e).

ed for resentencing. Shortly thereafter, our attention was drawn to the case of *United States v. Hundley*, 858 F.2d 58 (2d Cir.1988), in which the Second Circuit held in a case also involving a government appeal under the ACCA, that it lacked appellate jurisdiction. Concerned about whether we had appellate jurisdiction, we withdrew our opinion, vacated the judgment, and ordered a rehearing limited to briefing on the issue of the government's right to appeal the sentence in this case.

At the same time the government filed its brief with respect to appellate jurisdiction, it also filed a petition for a writ of mandamus under 28 U.S.C. § 1651(a).[4]

## II. APPELLATE JURISDICTION

It is well established that "[t]he government has no right of appeal in criminal cases except where a statute expressly grants such a right." *United States v. Kane*, 646 F.2d 4, 5 (1st Cir.1981); *see also United States v. Levasseur*, 846 F.2d 786, 787 (1st Cir.), *cert. denied,* —— U.S. ——, 109 S.Ct. 232, 102 L.Ed.2d 222 (1988). The Second Circuit has expanded upon this point:

> It is fundamental that "the United States has no right of appeal in a crimi-

nal case absent explicit statutory authority." *United States v. Scott*, 437 U.S. 82, 84–85, 98 S.Ct. 2187, 2190, 57 L.Ed.2d 65 (1978). This rule is based on the well-settled principle in federal jurisprudence that "appeals by the Government in criminal cases are something unusual, exceptional, not favored." *Carroll v. United States*, 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442 (1957). Additionally, the policy "has deep roots in the common law, for it was generally understood, at least in this country, that the sovereign had no right to appeal an adverse criminal judgment unless expressly authorized by statute to do so." *Arizona v. Manypenny, supra*, 451 U.S. [232] at 245, 101 S.Ct. [1657] at 1666 [68 L.Ed.2d 58 (1981)] (footnote omitted).

*Hundley*, 858 F.2d at 61 (citations omitted).

The ACCA does not explicitly provide for an appeal by the government from a district court's refusal to impose an enhanced penalty. The government argues that its right to appeal stems from either of two more general statutes: 18 U.S.C. § 3731[5] or 28 U.S.C. § 1291.[6] In *Hundley*, 858 F.2d 58, the Second Circuit rejected both of these arguments. *See also United*

---

**4.** This section provides: "(a) The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."

**5.** This statute provides:

In a criminal case an appeal by the United States shall lie to a court of appeals from a decision, judgment, or order of a district court dismissing an indictment or information or granting a new trial after verdict or judgment, as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution.

An appeal by the United States shall lie to a court of appeals from a decision or order of a district courts[1] suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the United States attorney certifies to the district court that the appeal is not taken for purpose of delay and that the evidence is substantial proof of a fact material in the proceeding.

An appeal by the United States shall lie to a court of appeals from a decision or order, entered by a district court of the United States, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release.

The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted.

The provisions of this section shall be liberally construed to effectuate its purposes.

Footnote 1 states: "So in original. Probably should be 'court'."

**6.** 28 U.S.C. § 1291 provides in pertinent part:

The courts of appeals (other than the United States Court of Appeals for the Federal Circuit) shall have jurisdiction of appeals from all final decisions of the district courts of the United States, the United States District Court for the District of the Canal Zone, the District Court of Guam, and the District Court of the Virgin Islands, except where a direct review may be had in the Supreme Court.

*States v. Palmer,* 871 F.2d 1202, 1209 (3d Cir.1989) (In ACCA cases, "[t]he government ... has no authority to take an appeal from a sentencing order."). 18 U.S.C. § 3731 does not explicitly include sentencing orders within the categories of orders appealable by the government. The circuits are split on the issue of whether § 3731 permits government appeals from sentencing orders, *see Hundley,* 858 F.2d at 62 (citing cases on both sides of the issue), and this Circuit has not addressed the issue.[7] We adopt the Second Circuit's analysis as to whether sentencing orders fit into § 3731.

We agree with those courts that have held that sentencing orders are not appealable by the Government under section 3731. The statute plainly limits appeals by the United States to specified categories of district court orders—those (1) dismissing an indictment or granting a new trial, (2) suppressing evidence or requiring the return of seized property, and (3) relating to the temporary release of a person charged or convicted of an offense. Sentencing orders are not included in the statute, nor are they even similar to any of the types of orders that are included. In light of the statute's precisely drawn provisions and the well-settled principle that Government appeals must be *explicitly* authorized by Congress, this conspicuous absence is highly significant.

We are further impressed by the fact that, as noted above, Congress has expressly authorized Government appeals of sentences in some enhancement statutes, *e.g.,* 18 U.S.C. §§ 3575, 3576 (dangerous special offenders), 21 U.S.C. § 849(h) (dangerous special drug offenders), but not in others, *e.g.,* 18 U.S.C. § 924(e) (armed career criminals). This

distinction would be superfluous if Congress had intended section 3731 to allow the Government to appeal all sentences. Finally, we note that when Congress undertook a wholesale revision of sentencing law in the Sentencing Reform Act of 1984, it authorized Government appeals from any sentence "in violation of law." Pub.L. No. 98–473, § 213(a), 98 Stat. 2011 (codified at 18 U.S.C. § 3742(b)(1) (Supp. IV 1986)). This addition to the Criminal Code " 'suggests that Congress understood the preexisting law to provide that such [sentencing] orders were not appealable.' " *United States v. Horak, supra,* 833 F.2d [1235] at 1248 n. 12 [7th Cir.1987] (quoting *Government of the Virgin Islands v. Douglas,* 812 F.2d 822, 831 n. 9 (3d Cir.1987)).

*Hundley,* 858 F.2d at 62–63 (other citations omitted; emphasis in original).

The government argues that the sweep of § 3731 should be construed in light of the Supreme Court's statement that "Congress intended to remove all statutory barriers to Government appeals and to allow appeals whenever the Constitution would permit." *United States v. Wilson,* 420 U.S. 332, 337, 95 S.Ct. 1013, 1019, 43 L.Ed.2d 232 (1975); *see also United States v. Scott,* 437 U.S. 82, 83, 98 S.Ct. 2187, 2189, 57 L.Ed.2d 65 (1978) (quoting *Wilson* ); *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 568, 97 S.Ct. 1349, 1353, 51 L.Ed.2d 642 (1977) (same).

We have, however, stated that the Court's statement "must be read in context." *Kane,* 646 F.2d at 6. We went on to hold that "[w]ithout some indication that the Court considered the[ ] implications of the proposed interpretation, we do not read the cited language in *Martin Linen* and *Wilson* as giving the government authority to appeal from decisions and orders of a

---

**7.** Our decision in *In re United States,* 540 F.2d 21 (1st Cir.1976), is inapposite to the present case. In that case, we held that a district court's refusal to sentence a defendant on all counts for which he was found guilty was an appealable order under § 3731 because this was " 'tantamount to the dismissal [of the count] of an indictment.' " *Id.* at 23 (quoting *United States v. Esposito,* 492 F.2d 6, 10 (7th Cir.), *cert. denied,* 414 U.S. 1135, 94 S.Ct. 879, 38 L.Ed.2d 760

(1974)). We have also held that the sentence enhancement provisions of ACCA are not a new crime which must be alleged as part of an indictment. *United States v. Rumney,* 867 F.2d 714 (1st Cir.) (discussing 18 U.S.C. app. § 1202(a)(1), the predecessor to § 924(e)(1)), *cert. denied,* — U.S. ——, 109 S.Ct. 3194, 105 L.Ed.2d 702 (1989). Thus, refusal to sentence a defendant to an enhanced term cannot be tantamount to a dismissal of part of an indictment.

kind different from those described in the second paragraph of section 3731 [orders suppressing or excluding evidence.]" *Id.* at 7. In *Hundley,* the Second Circuit also rejected an argument based on the Supreme Court's broad language: *"Wilson* does not purport to say that the government may appeal from orders such as sentencing orders that do not involve the dismissal of a prosecution and are not included in other section 3731 categories." *Hundley,* 858 F.2d at 63.

Although § 3731 is to be "liberally construed to effectuate its purposes," it cannot be read to include government appeals from sentencing orders. We think this point is highlighted by two other congressional sentencing actions: (1) express authorization of government appeals in other sentence enhancement statutes, and (2) express authorization of government appeals under the Sentencing Guidelines. *See Hundley,* 858 F.2d at 63.

 The government alternately contends that we have jurisdiction under 28 U.S.C. § 1291, set forth at note 7, *supra.* As a general rule, however, "the Court has reaffirmed that the Federal Government enjoys no inherent right to appeal a criminal judgment, and that the grant of general appellate jurisdiction, now contained in 28 U.S.C. § 1291, does not authorize such a federal appeal. *DiBella v. United States,* 369 U.S. 121, 130, 82 S.Ct. 654, 659, 7 L.Ed.2d 614 (1962); *Carroll v. United States,* 354 U.S. 394, 400–403, 77 S.Ct. 1332, 1336–38, 1 L.Ed.2d 1442 (1957)." *Arizona v. Manypenny,* 451 U.S. 232, 246–47, 101 S.Ct. 1657, 1666–67, 68 L.Ed.2d 58 (1981) (other citations omitted); *see also Hundley,* 858 F.2d at 64. The Supreme Court has, however, permitted appeals under § 1291 in criminal cases on a basis similar to the "collateral order" doctrine of civil cases.

> [C]ertain orders relating to a criminal case may be found to possess sufficient independence from the main course of the prosecution to warrant treatment as plenary orders, and thus be appealable on the authority of 28 U.S.C. § 1291 without regard to the limitations of 18

U.S.C. § 3731, just as in civil litigation orders of equivalent distinctness are appealable on the same authority without regard to the limitations of 28 U.S.C. § 1292.[13] The instances in criminal cases are very few.

> *Carroll v. United States,* 354 U.S. 394, 403, 77 S.Ct. 1332, 1338, 1 L.Ed.2d 1442 (1957). The footnote cited to *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541, 545–547, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949), and *Swift & Co. v. Compania Caribe,* 339 U.S. 684, 688–89, 70 S.Ct. 861, 864–65, 94 L.Ed. 1206 (1950).

As with the application of § 3731, the application of § 1291 to government sentencing appeals has split the circuits, *see Hundley,* 858 F.2d at 64–65 (citing cases on both sides of the issue), and this Circuit has yet to decide the issue. Here again we follow the Second Circuit's reasoning in *Hundley:*

> We believe that the District Court's decision in the present case not to apply the Armed Career Criminal Act is not one of the "very few" rulings sufficiently independent "from the main course of the prosecution" to warrant a Government appeal under section 1291 as construed by *Carroll.* Sentencing is a key element of any criminal prosecution. Indeed, "sentencing orders are themselves the final judgments in criminal cases," *Government of the Virgin Islands v. Douglas, supra,* 812 F.2d at 831 (citing *Berman v. United States,* 302 U.S. 211, 212, 58 S.Ct. 164, 165–66, 82 L.Ed. 204 (1937)), and "[t]he sentencing process is the inevitable culmination of a successful prosecution; it is an integral aspect of a conviction," *United States v. Denson, supra,* 588 F.2d [1112] at 1126 [5th Cir. 1979]. Particularly where as here the Government challenges the length of imprisonment imposed—the essence of a criminal sentence—the appeal is not in any sense independent of the main course of the prosecution.

> \* \* \* \* \* \*

> ... While we recognize that there may be elements of a sentencing order that are sufficiently removed from the main

course of the prosecution to permit a Government appeal, we are satisfied that where the applicability of a sentencing enhancement statute is at issue, an appeal by the Government is not authorized under the criminal collateral order doctrine.

*Hundley*, 858 F.2d at 65.

The government has no statutory basis for its appeal. We, therefore, turn to its petition for mandamus.

### III. MANDAMUS

■ The general considerations surrounding mandamus petitions are well settled:

> " 'Mandamus entreaties are generally subject to a pair of prophylactic rules, which together require that a petitioner show (a) some special risk of irreparable harm, and (b) clear entitlement to the relief requested.' *In re Recticel Foam Corp.*, 859 F.2d 1000, 1005 (1st Cir.1988) (footnote omitted)." *In re Bushkin Assocs., Inc.*, 864 F.2d 241, 243 (1st Cir. 1989) (further citations omitted).

*United States v. Collamore*, 868 F.2d 24, 27 (1st Cir.1989). "Mandamus, of course, may never be employed as a substitute for appeal...." *Will v. United States*, 389 U.S. 90, 97, 88 S.Ct. 269, 274, 19 L.Ed.2d 305 (1967). "And the party seeking mandamus has 'the burden of showing that its right to issuance of the writ is "clear and indisputable." ' " *Id.* at 96, 88 S.Ct. at 274 (quoting *Bankers Life & Cas. Co. v. Holland*, 346 U.S. 379, 384, 74 S.Ct. 145, 148, 98 L.Ed. 106 (1953)). Finally, "mandamus is itself governed by equitable considerations and is to be granted only in the exercise of sound discretion." *Whitehouse v. Illinois Central R.R. Co.*, 349 U.S. 366, 373, 75 S.Ct. 845, 850, 99 L.Ed. 1155 (1955).

The Third Circuit recently granted the government's petition for mandamus in a case which involved the same issue involved in the present case: whether breaking and entering convictions are predicate offenses under ACCA. We find its reasoning compelling:

> "The requirements that a duty be 'clearly defined' to warrant issuance of a writ does not rule out mandamus actions in situations where the interpretation of the controlling statute is in doubt.... As long as the statute, once interpreted creates a peremptory obligation for the officer to act, a mandamus action will lie."

*United States v. Palmer*, 871 F.2d at 1209 (quoting *Gov't of Virgin Islands v. Douglas*, 812 F.2d 822, 832 n. 10). The court then applied this proposition to the ACCA case before it:

> The government has no other means of obtaining review of this issue since it has no authority to take an appeal from a sentencing order ... Additionally, as we have discussed, we find that the district court clearly erred in the way in which it construed ACCA's definition of "burglary." Therefore, we find the government's right to the issuance of the writ to be clear and indisputable.... While the government may not make an end run around its statutorily limited right to appeal, the remedy of mandamus is available in situations where, as here, there is a challenge to the district court's power to impose the sentence it did, ... and the rigorous test for issuance of the writ is met.

*United States v. Palmer*, 871 F.2d at 1209–10.

We also note that in *United States v. Hundley*, 858 F.2d 58, the case on which we primarily relied for our finding that there was no appellate jurisdiction, the court pointedly stated:

> Moreover, the Government need not fear that district judges will be able to flout the clear requirements of sentencing statutes with impunity, even in those few cases likely to arise before the effective date of the Sentencing Reform Act of 1984, since the mandamus remedy is available in appropriate cases. *See, e.g., United States v. Jackson*, 550 F.2d 830, 831 (2d Cir.1977) (dispute as to "the district judge's power to impose the sentence that he did ... has long been recognized as falling squarely within the narrow range of cases for which mandamus is appropriate").

*Id.* at 66.

We therefore grant the government's petition for mandamus. In doing so, how-

ever, we wish to make it clear that the district judge here did not flout the clear requirements of the sentencing statute. As the following section of our opinion makes clear, the statute is not pellucidly clear and the district court wrestled long and hard with the problem; he was neither arbitrary nor unreasonable in his interpretation of the sentencing statute.

## IV. SENTENCE ENHANCEMENT

In asking for sentence enhancement the government offered five prior convictions:

(1) **Building or ship; breaking and entering at night.**
Mass.Gen.Laws Ann. ch. 266, § 16 Suffolk Superior Court, Massachusetts, October 27, 1977;

(2) **Punishment for Larceny.**
Mass.Gen.Laws Ann. ch. 266, § 25 Roxbury District Court, Massachusetts, June 7, 1978;

(3) **Burglary.**
18 Pa.Cons.Stat. § 3502 Allegheny County Court of Common Pleas, Pennsylvania, January 16, 1979;

(4) **Robbery by unarmed person.**
Mass.Gen.Laws Ann. ch. 265, § 19 Suffolk Superior Court, Massachusetts, June 10, 1980;

(5) **Dwelling house; entry at night, breaking and entering in day time.**
Mass.Gen.Laws Ann. ch. 266, § 18 Roxbury District Court, Massachusetts, December 20, 1983.

The district court ruled that the robbery conviction under Mass.Gen.Laws Ann. ch. 265, § 19 [8] qualified as an enhancement crime under the statute because it was a "violent felony." It assumed, without deciding, that the Pennsylvania burglary conviction also qualified. The district court ruled, however, that the other three Massachusetts crimes were not "violent felonies" within the meaning of § 924(e).

**8.** This statute states:
Whoever, not being armed with a dangerous weapon, by force and violence, or by assault and putting in fear, robs, steals and takes from the person of another any money

The government does not contest the ruling as to the larceny conviction, Mass.Gen. Laws Ann. ch. 266, § 25. The sole issue, therefore, is whether the two Massachusetts breaking and entering convictions are "violent felonies" under section 924(e). This requires an examination of the implicated statutes and a review of the legislative history of 18 U.S.C. § 924(e).

## V. THE MASSACHUSETTS STATUTE

■ The Massachusetts statutes provide:
§ 16. **Building or ship; breaking and entering at night**
Whoever, in the night time, breaks and enters a building, ship or vessel, with intent to commit a felony, shall be punished by imprisonment in the state prison for not more than twenty years or in a jail or house of correction for not more than two and one half years.
Mass.Gen.Laws Ann. ch. 266, § 16.
§ 18. **Dwelling house, entry at night; breaking and entering in day time**
Whoever, in the night time, enters a dwelling house without breaking, or breaks and enters in the day time a building, ship or vessel, with intent to commit a felony, no person lawfully therein being put in fear, shall be punished by imprisonment in the state prison for not more than ten years or by a fine of not more than five hundred dollars and imprisonment in jail for not more than two years.
Mass.Gen.Laws Ann. ch. 266, § 18.

The issue is whether these crimes come within the definition of "violent felony" in 18 U.S.C. § 924(e)(2)(B)(ii):
(B) the term "violent felony" means any crime punishable by imprisonment for a term exceeding one year that—

\* \* \* \* \* \*

(ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious

or other property which may be the subject of larceny, shall be punished by imprisonment in the state prison for life or for any term of years.

potential risk of physical injury to another.

The first question is what the term "burglary" means. The government contends that the legislative history of § 924(e) shows that Congress intended the word "burglary" be given a broad generic definition: "any felony consisting of entering or remaining surreptitiously within a building that is property of another with intent to engage in conduct constituting a Federal or State offense." Appellee argues that it should be restricted to its common law definition. It is clear that the Massachusetts statutes do not fall within the common law definition of burglary which is defined as "the breaking and entering of the dwelling house of another at night time, with intent to commit a felony." W.R. LaFave and A.W. Scott, Jr., *Criminal Law*, § 96, p. 708 (1972). We turn, therefore, to the legislative history of § 924(e).

The language at issue was adopted in 1986. In order to try and determine the intent of Congress, however, it is necessary to begin our review in 1982. Congressional hearings were held in 1982 and 1983 concerning the enactment of legislation aimed at enhancing the penalties for repeat perpetrators of armed robberies and armed burglaries. During the hearings, Roger M. Olsen, Deputy Assistant Attorney General, Criminal Division, pointed out:

> It is not clear whether this would include state offenses that do not use the terms "robbery" or "burglary," such as a statute that proscribes criminal entry with different gradations for the types of structures entered and the acts intended therein. It would be preferable to cover attempted robbery or burglary in the offense itself and state in the definitional section or in the legislative history that burglary, for example, is intended to include not only common law burglary or an offense that uses the term, but any form of criminal entry.

*Armed Robbery and Burglary Prevention Act, Hearing on H.R. 6386 Before the Subcomm. on Crime of the Committee on the Judiciary, the House of Representatives*, 97th Cong., 2d Sess. 36 (Sept. 23, 1982).

The framers of the bill responded to this concern by defining burglary as the offense of "entering or remaining surreptitiously within a building which is the property of another with intent to engage in conduct constituting a federal or state offense." *The Armed Career Criminal Act of 1983, Senate Report*, 20 (July 20, 1983). This Act, however, never became law.

The next chapter in the legislative history was the passage of the Comprehensive Crime Control Act of 1984, which included the Armed Career Criminal Act. It provided that a defendant with three previous convictions for robbery or burglary would receive a mandatory minimum sentence of 15 years. 18 U.S.C. app. II § 1202(a). The same broad generic definition of burglary used in the 1983 act was retained. 18 U.S.C. app. II § 1202(c)(9). This definition would have covered the two Massachusetts statutes at issue, but it was short-lived.

The Career Criminal Amendments Act of 1986 is the final chapter in the legislative history. It is this legislation which has generated the present controversy. The 1986 legislation made a "violent felony or a serious drug offense, or both" predicate crimes. 18 U.S.C. § 924(e)(1). As already noted, the definition of "violent felony" includes "any crime punishable by imprisonment for a term exceeding one year that ... is burglary, ...." 18 U.S.C. § 924(e)(2)(B)(ii). Significantly, the 1984 generic definition of burglary was omitted.

These changes were the result of Congress' desire to expand the number of predicate offenses. The focus was no longer exclusively on robbery and burglary. Drug traffic felonies were considered a serious threat to the public safety, as were other crimes, so the Act was expanded to include more predicate offenses.

Two different bills were discussed at the 1986 Congressional Committee hearings, H.R. 4639 and H.R. 4768. H.R. 4639 proposed to expand the list of predicate offenses to many major federal drug traffic felonies, as well as state and federal misdemeanors and felonies committed against persons and property. H.R. 4768 was sim-

ilar to H.R. 4639, except that it was more limited in its scope. H.R. 4768 proposed expanding the list of predicate offenses to include many major federal drug traffic felonies, as well as state and federal felonies involving physical force against a person, such as murder, rape and assault; crimes against property were not included.

The proponents of H.R. 4639 wanted to use the term "crime of violence" to describe predicate crimes. In his comments to the Senate Committee on S. 2312, the companion bill to H.R. 4639, Deputy Assistant Attorney General Knapp recommended the use of a generic federal definition of felony. He stated that the proposed "term 'crime of violence' would include robberies and burglaries since both are felonies that by their nature involve a substantial risk that physical force against the person or property of another may be used in the course of committing them." *Career Criminal Amendments Act, 1986: Hearing on S. 2312 Before the Subcomm. on Criminal Law of the Committee on the Judiciary, Senate,* 99th Cong., 2d Sess. 9 (May 14, 1986).

H.R. 4768 did not use the term "crime of violence," but instead used "violent felony" and defined it as "any state or federal felony that has as an element the use, attempted use, or threatened use of physical force against the person of another." *Hearing on H.R. 4639 and H.R. 4768 Before the Subcomm. on Crime of the Committee on the Judiciary, House of Representatives,* 99th Cong., 2d Sess. 15 (May 21, 1986). Proponents of the more narrowly focussed "violent felony" bill, H.R. 4768, wanted to eliminate burglary as a predicate offense. Congressman Hughes, moderator for the hearing, in questioning Deputy Assistant Attorney General Knapp, stated:

The only question that I have is, basically, as to the justification for retaining burglary as a category. I think a good case can be made for trafficking in explosives, I think a good case can be made for extortion, and of course burglary is an extremely serious crime. It is a street crime that is prosecuted, as many of the crimes we would be including at the State level. But is your feeling that burglary is a crime that should be among the list of crimes included in Career Criminal? It was not inadvertent that we left it out of H.R. 4768. It was our intent to focus on violent crimes as well as drug offenses.

*Id.* at 26. Mr. Knapp gave two reasons for retaining burglary as a predicate offense for sentence enhancement:

First of all, having had experience with a career criminal program in a district attorney's office, one of the critical standard categories involve people with a long history of burglary convictions.... That is probably the No. 1 professional crime. No. 2 even though injury is not an element of the offense, it is a potentially very dangerous offense, because when you take your very typical residential burglary or even your professional commercial burglary, there is a very serious danger to people who might be inadvertently found on the premises. Many crimes of violence do occur in the course of committing a burglary. It is something which is clearly a foreseeable risk, and for that reason is always included in any typical felony murder statute.

*Id.* at 26. Congressman Hughes stated that he saw both sides of the argument on burglary and that it was his leaning to "leave it alone; it is in the existing law; it was in the existing statute." *Id.* at 41.

That is what happened. Burglary, which had been a predicate offense since the inception of the career criminal legislation, was retained as one in the Career Criminal Amendments Act of 1986. But the 1984 definition of burglary, which encompassed the Massachusetts statutes at issue, was deleted. It is not clear why this was done, but it is clear that the deletion was intentional.

■ In addition to the legislative history, we must also take into consideration the canon of statutory interpretation that when Congress uses a common law term and does not otherwise define it, it is presumed that Congress intended to adopt the common law definition. *Morissette v. United States,* 342 U.S. 246, 263, 72 S.Ct. 240, 249, 96 L.Ed. 288 (1952). Appellee, of course, urges that we follow this canon because

the common law definition of burglary[9] does not cover the Massachusetts statutes. This argument is not without merit and has case support. In *United States v. Headspeth*, 852 F.2d 753 (4th Cir.1988), the court followed "the usual presumption that Congress intended the term [burglary] to be given its common law meaning." It held that the common law definition "does not encompass storehouse breaking as that offense is defined under Maryland law." *Id.* at 758. Recognizing that the case was a close one, the court invoked the rule of lenity to adopt the narrow interpretation of the statutory language. *Id.* at 759.

■ This approach is one way out of a difficult legislative conundrum. We resist, however, the temptation to follow the Fourth Circuit. As the Eleventh Circuit points out, the common law definition of burglary "has become an anachronism. Most States have abandoned the old common law definition of burglary, preferring instead to vary the degree of the offense by whether the structure was a dwelling, was occupied, or whether force or injury was threatened." *United States v. Hill*, 863 F.2d 1575, 1582 (11th Cir.1989). In light of the legislative history and the fact that most states have discarded the common law definition of burglary, *see id.* at 1582 n. 5, it would be unrealistic to foist upon the Congress the intent to follow a concept of the law that is no longer viable.

But neither can we accept the government's contention and ascribe to Congress the intent to follow the broad generic definition that was contained in the 1984 Act[10] but expressly omitted from the 1986 legislation. We frankly cannot divine how Congress intended to define burglary. The deliberate omission of the 1984 definition effectively nullifies the intent of Congress, exposed in the legislative history, to define burglary in broad generic terms.

This does not mean, however, that the Massachusetts statutes are not predicate crimes. We hold that they fall within the catch-all provision of § 924(e)(2)(B)(ii): " 'vi-

olent felony' means any crime ... that (ii) ... otherwise involves conduct that presents a serious potential risk of injury to another." One consistent theme that runs through the legislative history is that Congress wanted burglary as an enhancer because it was a crime that was being committed by a number of repeat offenders and could quickly turn into a "violent felony." It was pointed out that while a burglary may start out as a nonviolent crime, the burglar may resort to violence if someone is on the premises or appears there while the burglary is in process. As the Eighth Circuit has noted, "Congress could quite reasonably conclude that no matter what the felon's intent upon breaking in, the property owner may return, a neighbor may investigate, or a law enforcement official may respond. All of these scenarios present a grave threat of harm to persons." *United States v. Portwood*, 857 F.2d 1221, 1224 (8th Cir.1988). Under the catch-all provision of the statute, it matters not how burglary is defined. The crucial factor is an unauthorized entry of the premises of another.

■ The conduct proscribed in both Massachusetts statutes poses the potential for a sudden eruption of violence. We are aware that Mass.Gen.Laws Ann. ch. 266, § 18 contains the phrase, "no person lawfully therein being put in fear" but this does not change our result. That no person was in fact put in fear does not alter the basic premise of Congress that any felonious breaking and entering presents "a serious potential risk of physical injury to another." We hold that both Massachusetts breaking and entering statutes are predicate crimes.

We see no reason to apply the rule of lenity.

Remanded for resentencing.

---

**9.** Burglary at common law consisted of the breaking and entering of the dwelling of another at night, with the intent to commit a felony.

**10.** Burglary was defined in the 1984 Act as "entering or remaining surreptitiously within a building that is the property of another with the intent to engage in conduct constituting a federal or state offense."